By the Court. Oakley, Ch. J.
The defendant moves for a new trial, on several grounds.
1. The first which we will notice, is that the jury have given excessive damages. Although the court has the power to grant new trials on this ground, it is one that is sparingly used, and we see no reason for its exercise in this case. The amount of the verdict does not shock the sense of the court as to its propriety, and we cannot disturb it.
2. It was contended that the verdict was clearly against the weight of evidence. We have considered this objection, and without going into detail, it suffices to say, that we think the verdict is not assailable on this ground.
3. We next come to the points of law ruled at the trial. It was there contended, and the point was embodied in the motion for a nonsuit, that the memorial complained of as being a libel, was a privileged communication, upon which no action would lie, without express proof of malice and want of probable cause, to be given affirmatively by the plaintiff, and that no such proof had been made.
We are of opinion, that sufficient proof of the want of probable cause had then been given. At all events it was enough to go to the jury for their consideration.
As to the other branch of the proposition, that the memorial was a privileged communication, the judge took the view of it contended for by the plaintiff, and charged the jury accordingly, when he submitted the cause to them. We deem that to be the true rule of law applicable to the case. The postmaster general was a high executive officer of the government, charged with important public interests ; and it was the right of the defendant and of every citizen, to make a representation to him and to the subordinate officers under him, in relation to the business of his department, and the bids for contracts and other dealings connected with such business.
On the argument of the motion for a new trial, the defendant’s *349 counsel assumed much broader ground, and claimed that the memorial in question was an absolutely privileged communication, for the publication of which, the defendant under no circumstances could be liable in an action for a libel. Although this point was not taken at the trial, and does not strictly arise in reviewing the decisions there made, we are inclined to put it in the way of being rectified, if the point be tenable. We have therefore examined the matter and considered it fully, and we are clearly of the opinion, that the memorial was not an unqualified or absolutely privileged communication.
In order to clothe it with the privilege accorded to publications of this class, -it must appear to have been made in good faith, believing the statements which it contains to be true, or having probable cause to believe them to be true. Hie action upon it is thus assimilated to an action for malicious prosecution, where the want of probable cause is to be proved by the plaintiff. He is to make out that ground of his action by proper evidence. It often happens that slender proof on his part is enough to throw the burthen of proof on the defendant. Such was the case in this suit. The plaintiff, when he rested, had given evidence, tending to show the absence of probable cause on the part of the defendant to make the charge contained in the memorial, and sufficient, if not rebutted, to warrant a jury in finding that such cause did not exist.
We were referred to a great variety of adjudications, as well as to the opinions of judges, and the treatises on this subject.
, We are not much inclined, after considering the authorities, to extend the doctrine of absolutely privileged communications. We shall conform to the settled rule, as far as the law has carried it; but we shall go no further.
In England, as well as here, this doctrine of absolute privilege, is confined to two classes of cases. First, To proceedings in corn’ts of justice. Secondly, In England, to parliamentary proceedings; and by analogy to our legislative proceedings. Hie latter class originated in England, in the fact that parliament was considered the high court of justice in the kingdom. The privilege was applied to legislative bodies in this country, without the existence of the reason which induced it there.
*350 The doctrine has not been extended here, beyond legal proceedings ; and applications, memorials, and similar matters presented to the legislature or growing out of legislative proceedings. And in all these cases, the privilege is confined to matters pertinent to the legal or legislative proceeding, to which the communication relates.
The other class of privileged communications, for which there is no absolute privilege, is very extensive. Thus, an application to the appointing power, in respect to a candidate for a public office, is an illustration. It is privileged, in a certain way. In order to make the writer or publisher liable, it must appear that he acted maliciously and without probable cause. If there were no probable cause for the communication, the law implies that it was made with 'malice. If, however, it appear that there was probable cause, the communication is privileged; no matter how much actual malice dictated it.
To apply these principles to this case. The defendant had a perfect right to submit this memorial to the postmaster general; and it is of no consequence what were his motives, if he had probable cause for the statements which it contained.
The question was submitted to the jury whether he had such cause ; they have found against him, and we perceive no good reason for disturbing their conclusion.
4. An exception was taken at the trial, that the judge had no right to submit to the jury, the question whether the memorial was shown by the defendant to any person other than the postmaster general, and those official characters connected with the general post-office, on the ground that there was no evidence to sustain that allegation.
As to this exception, there was evidence given, tending to show that the defendant did exhibit his memorial to a person not in the post-office department. It is true, the testimony of the witness examined to this point, was somewhat vague ; but it was proper for the consideration of the jury, and it is not so indefinite that we could interfere with their verdict, if we believed it to have been given on this grounds alone.
It should be observed, that no exception was taken to the' charge at the trial; and we think, according to correct practice, *351 the defendant is not at liberty to take his objection for the first time upon a motion for a new trial.
It is said that the practice of the late supreme court authorized a party on a case, to raise any point which the case disclosed, whether it were taken at the trial or not. That may have been so, but it never was the practice in this court. At an early period, we adopted the course of combining a case and bill of exceptions. The history of the trial was presented in the form of a case, because the evidence would then be before us for review in respect of the verdict; while the leave reserved, expressly or tacitly, to turn it into a bill of exceptions, saved the parties all ulterior remedies. We never intended by that' practice, to allow an exception to the charge of the judge to be made for the first time at the argument.
It is said by the defendant, that something was omitted by the judge in his charge, which ought to have been given to the jury. If this were so, (which we cannot perceive,) the defendant should have brought the matter to the judge’s notice at the trial, and then taken his objection, if the jury were not instructed accordingly.
The main point of law involved in the case and presented at the trial, was ruled in the defendant’s favor; and the jury having found against him on the facts of the case, we cannot interfere with their verdict.
Motion for new trial denied.