# HARVEY *v.* OSBORN.

FORMER ADJUDICATION. — *Estoppel.* — *Suretyship.* — *Trial of.* — *Pleading.* — *Practice.*—Proceeding to determine the question of suretyship, as between A. and B., the defendants in an action upon a promissory note, wherein A. had appeared and answered and B. had made default. To a complaint by A. alleging himself to be the surety, only, and B. to be the principal, B. answered, alleging as matter of estoppel, that in the answer by A., in the original action, he had alleged such suretyship on such note, and had asked to be discharged because of a failure of the plaintiff to sue such note upon being notified in writing, by A., so to do, and because of an alleged extension of the time of such note upon a consideration paid by B., as principal, to the plaintiff, and that upon the trial of such original action a finding had been rendered by the court, for the plaintiff and against A., upon such issues.

*Held,* on demurrer, that such answer by B. is insufficient.

*Held,* also, that, to such answer by A., to the original complaint, B. could not have demurred or pleaded, and therefore the matters therein alleged were not *res adjudicata,* as between A. and B.

SAME.—*Evidence.*—Where, on the trial of the question of suretyship, as between A. and B., the makers of a promissory note upon which they have been sued, upon pleadings by each, alleging that he was the surety and the other the principal, and the evidence established that such note had been given for a loan of money by the payee, and that when such money was procured, A., in the presence of B. and the payee, took such money and carried it away, it was competent for A., in order to rebut any inference, arising from such evidence, that he was the principal, to introduce evidence to show that B. was, at the time of such loan, indebted to him, as a circumstance tending to support his own testimony that B. had procured such loan to pay such indebtedness to A.

SAME.—*Leading Question.*—A question, in the nature of a direction to the witness to whom it is put, to state what, if any, knowledge he has concerning a material matter in controversy, to which his attention is, by the same question, called, is not leading.

SAME.—A question which suggests to the witness, and leads him to make, the answer desired, is leading.

SAME.—*Practice.*—*New Trial.*—Where alleged error of the court, in the admission or exclusion of evidence offered, is relied upon as ground for a new trial, such evidence must be clearly specified in the written motion therefor.

SAME.—*Instructions to Jury.*—Where the law embodied in instructions, asked to be given to the jury trying a cause, is, in part, contained in instructions given, and, in part, not applicable to the evidence given in the cause, it is not error to refuse them.

DEPOSITION.—*Motion to Suppress.*—*Cause.*—*Notice.*—The fact that the certifi-

cate to a deposition shows it to have been taken at the "city," instead of at the "town," of A., as specified in the notice of such taking, is no cause for suppressing such deposition.

SAME.—*Presumption.—Practice.*—In the absence of an affidavit showing them to be different places, it will be presumed that the office of the clerk of the "county court," etc., at which the certificate to a deposition shows it to have been taken, is the same place as the office of the clerk of the "county," etc., where the notice specified it would be taken.

SAME.—*Court of Record.*—A court having a clerk and a seal is "a court of record."

SAME.—*Official Character.—Waiver of Proof.—Clerk of Court of Record.*—If proof of the official character of an officer before whom a deposition is to be taken be waived, his certificate thereto, under the seal and as the clerk of a court, and such waiver, are sufficient evidence that such deposition was taken by the "clerk of a court of record."

SAME.—*Clerk of Court.—How He Must Certify.*—Where a deposition is taken before the "clerk of a court of record" he must certify to the same under the seal of such court.

SAME.—*Officer.—Notice.*—The notice of the taking of a deposition need not specify before what particular officer it will be taken; but if it does so specify, the fact that it was taken before a different officer will not render the deposition invalid.

From the Franklin Circuit Court.

*T. B. Adams, F. Berry, H. Berry* and *W. H. Bracken,* for appellant.

*C. C. Binkley, H. W. Harrington, W. H. Jones* and *F. S. Swift,* for appellee.

HOWK, J.—At the March term, 1873, of the court of common pleas of Franklin county, Indiana, one John Roberts had an action then and there pending, against both the appellant and the appellee in this cause, for the recovery of the amount due on a promissory note, of which the following is a copy, to wit:

"$339.60.                    BROOKVILLE, March 1st, 1868.

"One year after date, we promise to pay to John Roberts, or order, three hundred and thirty-nine dollars and sixty cents, value received, waiving the benefit of valuation and appraisement laws.

(Signed)                    "WILLIAM OSBORN.
                            "SQUIRE HARVEY."

In that action, the appellant, Harvey, made default; but the appellee, Osborn, appeared and filed his answer in four paragraphs, to the complaint of said John Roberts, as follows:

First.   A general denial;

Second.   That as to thirty-nine dollars and sixty cents of the note, there was no consideration, and that the rest of the note was paid before the suit was commenced;

Third.   That he signed the note as the surety, only, of said Squire Harvey, and that after the maturity of said note, on November 13th, 1872, by written notice to said John Roberts, a copy of which was filed with and made part of said answer, he required said Roberts to forthwith institute suit on said note; and that said Roberts did not, within a reasonable length of time, bring his action on said note and prosecute the same to judgment and execution.   Wherefore he said that he, Osborn, was discharged from all liability on said note; and,

Fourth.   That he admitted the execution of the note sued on, but he said that it was given for the sole debt of said Squire Harvey, and he, Osborn, was said Harvey's surety, only, which said John Roberts well knew; that after the maturity of said note, and at the time that said Roberts knew that he, said Osborn, was only a surety on said note, said Roberts agreed with said Harvey, in consideration of the payment of interest at a rate exceeding that provided for in said note, to extend the time of payment thereof for the space of one year, and did so extend said time of payment,—all of which was done without the knowledge or consent of said Osborn.

The said John Roberts replied to the separate answer of said William Osborn, by a general denial of each and every allegation contained in each paragraph of said answer.   Upon the issues thus joined, there was a trial by said court of common pleas, without a jury, and a finding made in favor of said John Roberts, that the material allegations of his complaint were proven and true; and

upon this finding, and the default of said Harvey, a judgment was rendered by said court, in favor of said Roberts, against both the appellant and appellee, for the amount due on said note, and costs of suit.

It appears from the record, that the appellee, William Osborn, at the time of the filing of his said answers to the complaint of said John Roberts, also filed in said court of common pleas, and in said cause, what was termed a cross-complaint, but was, in fact, a complaint, under the provisions of the 674th section of the practice act. This section reads as follows:

"Sec. 674. When any action is brought against two or more defendants upon a contract, any one or more of the defendants being surety for the others, the surety may, upon a written complaint to the court, cause the question of suretyship to be tried and determined, upon the issue made by the parties, at the trial of the cause, or at any time before or after the trial, or at a subsequent term; but such proceedings shall not affect the proceedings of the plaintiff." 2 R. S. 1876, p. 277.

The complaint of the appellee, William Osborn, under this section of the code, alleged, in substance, that he admitted the execution of the note in suit, but that it was given for money borrowed by the appellant, Squire Harvey, from said John Roberts, for the use and benefit of the appellant; and the appellee averred, that he signed said note as surety for the appellant, who was the principal therein; and the appellee was surety, only; and the appellee asked, that the appellant's property be first exhausted, before execution should be levied on appellee's property.

The question of suretyship, presented by this complaint, was not tried at the March term, 1873, of said court of common pleas; and before the next term, that court was abolished, and this proceeding was transferred, by operation of law, into the court below.

At the April term, 1873, of the court below, the parties

all appeared, and the appellant filed his separate answer to appellee's complaint, and also his cross-complaint.

The first paragraph of appellant's answer was a general denial of the allegations of appellee's complaint.

The second paragraph, termed a cross-complaint, was, in fact, a complaint by the appellant, under the said 674th section of the practice act, in which the appellant alleged, in substance, that the note in suit was executed by the appellee, as principal, and by the appellant, as surety for the appellee, and that, in truth and in fact, the appellee was the principal in, and derived the sole benefit from, the note sued on; and the appellant asked that the appellee's property might be exhausted, before any execution, issued on said judgment, should be levied on appellant's property, etc.

In the third paragraph of his answer, the appellant alleged, in substance, that he executed the note mentioned in the appellee's complaint; that afterwards, to wit, on the 11th day of February, 1873, the said John Roberts brought suit on said note, against the appellee and the appellant, in the Franklin common pleas court; that the appellee entered his appearance and filed his answer to the complaint of said John Roberts, pleading as a defence to said action, that said note had been paid before the commencement of suit; that he, the appellee, executed the said note as the surety of the appellant, who was principal therein, and that appellee was the surety, only, of the appellant, and that it was the appellant's debt,—to which the said Roberts replied by a general denial; that at the March term, 1873, of said common pleas court, said cause was submitted to said court, for trial on the issues joined, and there was a finding and judgment that the appellee and appellant were both principals on said note, and a judgment rendered by said court in favor of said Roberts, against both the appellee and the appellant, for the amount due on said note; and a copy of said proceedings and judgment was filed with and made part of said

answer.   And the appellant averred, that the appellee was forever estopped, by said proceedings and judgment, from maintaining his said action against the appellant. And appellant demanded judgment, etc.

The appellee replied to the appellant's second paragraph of answer or complaint, by a general denial of the matters alleged therein.

And the appellee demurred to the third paragraph of appellant's answer, for the want of sufficient facts therein to constitute a defence to appellee's complaint, which demurrer was sustained by the court below, and to this decision the appellant excepted.

And the action being at issue, as between the appellee and the appellant, was tried by a jury, in the court below, which trial resulted in a verdict for the appellee, that he executed the note sued on as the surety of the appellant. Upon written causes filed, the appellant moved the court below for a new trial, which motion was overruled, and appellant excepted.   And a judgment was then rendered upon the verdict, as provided for in such cases by section 675 of the practice act.   2 R. S. 1876, p. 279.

In this court, the appellant has assigned errors to the number of fifteen; but of these alleged errors only two are available to the appellant, as here presented, for any purpose.   These two available errors are the following:

1st.   Error of the court below, in sustaining appellee's demurrer to the third paragraph of appellant's answer; and,

2d.   Error of the court below, in overruling the appellant's motion for a new trial.

In our opinion, the facts alleged by the appellant, in the third paragraph of his answer, were clearly insufficient to estop the appellee from alleging and proving, that, as between him and the appellant, he was the appellant's surety on the note in suit, or from demanding all the relief afforded in case of suretyship, by said 675th section of the code of civil practice, *supra*.   The answers filed by the appellee, to the complaint of John Roberts, and

the reply of the latter in denial of those answers, and the finding and judgment of the court below on those issues, did not and could not determine finally the controversy between the appellant and the appellee, as to their relative liabilities on the note sued on; for there was not, and could not be under our system of pleading, any issue joined by the appellant on the said answers of the appellee to the complaint of John Roberts. Where two parties are sued in the same action, and one files a separate answer to the complaint, and not in the nature of a cross-complaint against his codefendant, such codefendant can not, under our code of practice, demur or reply to, or join issue in any manner upon such separate answer. And in such a case, the finding and judgment of the court, on an issue joined on such separate answer by the plaintiff, will not necessarily conclude and determine any of the merely relative rights of the defendants, as between themselves. In the case at bar, it is very clear, we think, that the appellant was not and could not be estopped or concluded by the finding and judgment of the court below, on the issues joined between the appellee and John Roberts, as to any matter or existing right between the appellant and the appellee. And it is equally clear, in our opinion, that however binding and conclusive the judgment was upon the appellee, as between him and the plaintiff, John Roberts, as to any matters in issue between them, yet that judgment would not bar or estop the appellee from litigating the same matters, or a part of them, with any one who was not a party to the issues between himself and the plaintiff, John Roberts. We hold, therefore, that the court below did not err in sustaining the appellee's demurrer to the third paragraph of the appellant's answer.

The second alleged error, which the appellant has properly assigned on the record of this cause, is the decision of the court below in overruling the appellant's motion for a new trial.

In his motion for a new trial, the appellant assigned fifteen different alleged causes for such new trial; and each one of these several causes the appellant has elaborately argued in his brief of this action, in this court. We will consider and decide, as briefly as we can, the questions presented by these several alleged causes for a new trial, in their enumerated order.

1. The first alleged cause for a new trial was, that the court had erred in overruling the appellant's motion to suppress the depositions of George R. Osborn and Henry Coen, taken by the appellee and read in evidence on the trial, for the reasons specified in said motion. Five reasons were assigned by the appellant for the suppression of these depositions. The first reason was, that the depositions were not taken at the town of Olney, but were taken at the city of Olney, Richland county, Illinois, when the notice was for the taking of the depositions at the town of Olney. A town is not always a city, but a city is always a town. Webster's definition of a city is, that it is a large town, an incorporated town. There is nothing in this first reason.

The second reason was, that the depositions were not taken at the office of the clerk of the county of Richland, in the town of Olney and State of Illinois, as stated in the notice for the taking thereof, but were taken at the office of the clerk of the county court, in the city of Olney, in the county of Richland, and State of Illinois. In assigning this reason, the appellant evidently assumed that the place indicated by the latter description was another and different place from the one indicated by the description in the notice. It seems to us, however, that these two descriptions indicate one and the same place, and are only different modes of describing it. If these two descriptions indicated, in fact, two different places, the appellant should have shown that fact by his affidavit. In the absence of such an affidavit, we hold that the latter

description sufficiently showed that the depositions were taken at the place indicated in the notice.

The third reason was, that the depositions were not taken before an officer authorized by law to take the same. The 245th section of our code of civil practice provides, that " Depositions of witnesses, taken within or without the State, may be taken   *   *   *   *   before any judge, justice of the peace, notary public, mayor or recorder of a city, clerk of a court of record, or commissioner appointed by the court to take depositions." 2 R. S. 1876, p. 138. The depositions, in this case, appear to have been taken before William F. Shelby, clerk of the county court of Richland county, Illinois. In acknowledging service of the notice for the taking of the depositions, the appellant expressly waived " *dedimus* and certificate of official character of the officer before whom said depositions are taken." But it is objected, that it did not appear that the " county court" of Richland county, Illinois, was a " court of record." We think otherwise. Appellant's waiver of proof of the official character of the clerk of that court was equivalent to an admission that the court had a clerk, and the seal annexed to the clerk's certificate, attached to the depositions, showed that the court had a seal. A court having a clerk and a seal is a " court of record," within the meaning of our law. Therefore we hold, on this point, that the depositions were taken before the clerk of a court of record,—an officer authorized by the law of this State to take depositions, either within or without this State.

The fourth reason assigned in appellant's motion was, that the seal, attached to the certificate of the pretended officer before whom the same were taken, was not his seal, but the seal of the county court. Our answer to this is, that where depositions are taken before the clerk of a court of record, as such, the only proper seal for him to use, in his certificate to such depositions, is the seal of the court of record of which he is clerk.

And the fifth reason assigned in support of said motion was, that no notice was served upon, accepted or waived, for or by the appellant, to take said depositions, before the pretended officer before whom said depositions purport to have been taken. It is a sufficient answer to this to say, that the law does not require that a notice to take depositions should specify the officer, pretended or otherwise, before whom the depositions are taken. 2 R. S. 1876, p. 139, sec. 246. If the notice should specify the officer before whom the depositions are to be taken, which it does not in this case, the party would not thereby be precluded from taking his depositions before any officer authorized by law to take depositions. And if the notice complied with the requirements of the 246th section of the practice act, it would be sufficient to authorize the taking of the depositions before any officer authorized by by law to take them, whether the notice names any officer, pretended or otherwise, or not.

In our opinion, therefore, the appellant's motion to suppress the depositions mentioned therein was correctly overruled by the court below.

2d. The second cause assigned by the appellant, in his motion for a new trial, was, that the court erred in overruling his motion to suppress questions third, fourth and fifth, and the answers thereto, in the deposition of George R. Osborn, taken and read in evidence by the appellee, on the trial. The third question referred to was as follows:

"State what you may know, if anything, of any indebtedness of Squire Harvey, one of the defendants, to William Osborn, the other of the defendants, named in this case, on or about the year 1867?"

Appellant's objection to this question was, that it was "leading and improper." Ordinarily, a "leading question" is one, that, by its terms, suggests to the witness the answer he is expected to make, and leads him to make such answer. This third question was certainly not a

leading question, and what the appellant meant by objecting to the question as "improper," he has failed to point out, either to the court below or to this court. The answer of the deponent to this third question was as follows:

"My brother, William Osborn, about that time, held a note of Squire Harvey for the sum of one hundred and fifty dollars; my brother, William, and myself were living together at the time, and I was in the habit of keeping his papers. Among the papers, I frequently saw a note for that sum, purporting to be drawn by Harvey to my brother William; learned from Harvey that the note was for money loaned to him by my brother William, to pay for a piece of land. The note, as near as I remember, was given in 1865."

Appellant's objection to this answer was, that it was "improper, incompetent and irrelevant."

In our opinion, this objection was not well taken. The appellant and the appellee each claimed to be the surety of the other, on the note in suit. Upon the face of the note, it was the joint note of both appellant and appellee. Each was trying to show that the other was the principal in the note, and he was simply a surety. Neither of them had much direct or positive testimony on the question. Each of them was ready to, and did, testify, positively and unequivocally, that he was merely a surety, while the other was the principal in said note. Each of them desired to fortify his position and claim in regard to the note, by such facts and circumstances as would corroborate and support him in his account of the transaction. Appellant expected to prove, that, while he and the appellee were both present when the money was raised from John Roberts on the note, yet the appellee had picked up the money, put it in his pocket, and went away. Appellee's mode of proving his side of the case was much

more lengthy and elaborate, but perhaps much more in accordance with the actual facts of this case.

The appellee claimed, that, before the date of the note in suit, the appellant, who had married appellee's sister, had become indebted to the appellee, for money loaned and otherwise; that some time before the date of the note sued on, the appellee had told the appellant, that he wanted to buy some shares in his father's estate, and in doing so he would need the money which the appellant owed him; that thereupon the appellant sought the payee of the note in suit, and arranged to borrow the money from the latter, to pay his indebtedness to the appellee; that appellant then went to appellee, and said that he could get the money from John Roberts, to pay his indebtedness to appellee, if the appellee would become his surety on a note to John Roberts for the money; that, accordingly, the appellee agreed to and did become the appellant's surety on the note in suit, and went with the appellant to John Roberts for the purpose of giving the note and getting the money; and that when John Roberts counted out the money, as it was well understood between the appellant and appellee that the money was to pay appellant's indebtedness to appellee, the latter took up, and went away with, the money.

It will be seen, from the foregoing version of the appellee's case, that one of the most important points, which the appellee was required to prove on the trial, was, that the appellant, at or before the date of the note in suit, owed the appellee about the amount of the note. The evidence of such indebtedness would not, of course, prove, that the appellee was appellant's surety on said note; but it would tend to support and corroborate the appellee's account of the transaction, and to rebut any presumption which might otherwise be drawn from the fact, that, when John Roberts counted out the money on the note in suit, the appellee took up and went away with the money. For these purposes, we think that evidence, tending to

prove the appellant's indebtedness to appellee, at or about the date of the note sued on, was clearly competent and admissible. We have stated this matter fully, because, without a knowledge of the case, as claimed by each of the parties, our rulings on the admission or exclusion of evidence would be unintelligible.

The fourth question referred to was as follows: "Do you know anything of the other moneyed transactions between these same parties; if so, state their nature, and the time, as near as you may remember?" Appellant's objection to this question was, that it was "leading and improper." But for reasons already given, the question was neither leading nor improper. This question could not possibly suggest to the witness any answer. The same objection was made to the answer to this question as to the answer to the third question; but for the reasons given in relation to the latter answer, appellant's objections to the answer to the fourth question were not well taken.

The fifth question referred to was as follows: "State what you may know, if anything, of the purchase of land, by your brother William, from Harvey or Harvey's wife, —share or shares of an estate,—when it was, and what land it was, and what, if any thing, did Harvey ever say to you on the subject?" This question was also objected to by appellant, as "leading and improper;" but we do not so regard the question. And the answer to this question was objected to on precisely the same grounds that the answer to the third question, to the same witness, was objected to; but for the reasons given in answer to the objections to the latter answer, we think the answer to the fifth question was properly sustained. So that our conclusion is, the court below committed no error in overruling appellant's motion to suppress the said parts of the said George R. Osborn's deposition.

3. The third alleged cause for a new trial, assigned by appellant, was, that the court erred in overruling appel-

lant's motion to suppress the third, fourth and fifth questions, and the answers thereto, in Henry Coen's deposition, taken and read by the appellee, on the trial, as evidence in his behalf. The third question referred to was this: " State what you may know, if any thing, about any in-, debtedness by Squire Harvey, one of the defendants in the cause, to William Osborn, other defendant ?" Appellant's objection to this question was, that it was " leading and improper ; ' but we hold, that the question was not objectionable on either ground. And the answer to this question was also objected to as " improper, incompetent and irrelevant ;" but the answer was a proper response to the question, and we think it was competent and relevant.

The fourth question referred to was this: " In speaking of a balance of an interest of his wife in the homestead, was reference had to a share purchased by William Osborn, of the wife of Harvey, as child and heir at law of James T. Osborn, or was it some other and different claim ?" We do not think that this question was open to appellant's objection, that it was " leading and improper." The question naturally arose from the deponent's answer to the preceding question, and was a proper question. Nor do we think that the answer to this question was objectionable ; it was merely explanatory of a previous answer of the same witness.

The fifth question was as follows: " State what you may know about the making of some barrel staves, by yourself and William Osborn ; who got the staves, and who was to pay for them, and to whom was payment to be made ; how many staves were there, and how much, per thousand, was to be given for them, and when it was ?" There is certainly nothing in this question which would indicate to the deponent what answer he should make thereto ; but the appellant objected that the question was " leading and improper." In our opinion the question was unobjectionable ; and, for reasons heretofore given,

the answer to this question was proper, competent and relevant. And therefore we conclude, that the court below did not err in overruling the appellant's motion to suppress parts of Henry Coen's deposition.

The fourth and fifth causes for a new trial, assigned by appellant, may be considered together. The fourth cause was, that the court erred in permitting "illegal, improper, incompetent and irrelevant evidence," offered by appellee, to go to the jury, over appellant's objections. And the fifth cause was, that the court erred in excluding, and refusing to let go to the jury, " legal, proper, competent and relevant evidence," pertinent to the issues joined in this cause, offered by the appellant. ₃ In neither of these alleged causes for a new trial is the evidence referred to, specified or pointed out, or made certain, in any manner. Each of these causes was too vague, indefinite and uncertain, to present any question for the consideration, either of the court below or of this court. It has been held, by this court, in numerous cases, that a motion for a new trial, for either one of the causes now being considered, must specify or point out the evidence so admitted or excluded. *The Ohio, etc., R. W. Co.* v. *Hemberger*, 43 Ind. 462; *Sherlock* v. *Alling*, 44 Ind. 184; *Meek* v. *Keene*, 47 Ind. 77.

The sixth, seventh, eighth and ninth causes for a new trial, assigned by the appellant, may be considered together. Of these, the first three relate to the instructions, eight in number, given to the jury by the court below, of its own motion; and the ninth cause relates to written instructions, to the number of ten, prepared by appellant's counsel, and which the appellant requested the court below to give to the jury, but the request was refused. We have very carefully examined and considered the instructions given by the court below, to the jury trying this cause, and, in our opinion, these instructions contain a full and fair statement of the law applicable to the facts of the case, as developed by the evidence on the trial. It

is observable, indeed, that while the appellant's counsel have criticised, at length, the verbiage and syntax of the instructions given, they have failed to point out a single objection to the law enunciated in those instructions.

Upon a thorough examination of the ten instructions, asked for by the appellant, and which the court below refused to give to the jury, we can not say that the court committed an error in its refusal to give any one of those instructions. It is not necessary that we should set out and examine the instructions, asked for and refused, in detail. It will suffice to say, that much of the law stated in those instructions was not applicable to the facts of this cause, as developed by the evidence before the jury; and that all of the law therein which was applicable to the facts of this case, was given to the jury by the court below, in its own instructions. Therefore, we think the instructions asked for by the appellant were properly refused.

The tenth, eleventh, twelfth, thirteenth, fourteenth and fifteenth causes for a new trial, assigned by the appellant, are only different modes of alleging the sixth statutory cause for a new trial, to wit:

" Sixth. That the verdict or decision is not sustained by sufficient evidence, or is contrary to law." 2 R. S. 1876, p. 181.

These several causes present but one and the same question, viz.: Was there, or not, a sufficiency of competent evidence before the jury trying the cause, to sustain their verdict? In our opinion, there was a clear preponderance of competent evidence in support of the verdict in this cause. From the peculiar character of this cause, a much wider field for investigation was opened up than ordinarily arises in such cases. And we must say, that, in our opinion, the appellee fully sustained, by competent evidence, his account of the relations of himself and the appellant, as between themselves, to the note in suit, in every important particular.

In conclusion, we add, that for the reasons given, the

court below did not err in overruling the appellant's motion for a new trial.

The judgment of the court below is affirmed, at the appellant's costs.