## SUPREME COURT.

### Joseph Hart agt. George Alfred Townsend.

*Libel — Matter which is defamatory — Evidence — Newspapers — Justification that the words are true — Qualifiedly privileged cases — Correspondent of newspaper — Proof of malice required — Damages — Question for jury.*

In an action of libel brought by plaintiff, the publisher of a newspaper in the city of New York called "Truth," against defendant, who was a regular correspondent of the "Cincinnati Enquirer." The complaint was that he, defendant, wrote and published concerning him and the newspaper the following matter: "The newspaper 'Truth' is alleged to have been started for the purposes of plunder:"

*Held, first,* that the matter is in itself defamatory, and unless its publication was justified it is actionable.

*Second.* The motive which inspired the foundation of a newspaper can be well shown by its own columns as they speak from day to day.

*Third.* The official conduct of men in public life, and the fitness and claims of candidates for official station, are fair subjects for review and criticism in the public prints, and such honest criticism, although it be unfriendly and severe, can give no occasion for the suggestion that it proceeds from unworthy or indirect motives. An independent press may feel contrained under a sense of duty to discuss such matters at times with honest plainness, but assaults upon private persons and character are not shielded by the rule which allows publishers of newspapers to review, criticise and energetically oppose the public action of men in official station, or those who are seeking it.

*Fourth.* If the words published by the defendant are true under the evidence then the defendant's justification is established, otherwise not.

*Fifth.* If the work of this defendant in preparing and publishing this communication, including the matter complained of, was in good faith done, and in the honest belief that it was true in statement and comment, and without any indirect motive to injure the plaintiff or the newspaper in question, or ill-will toward him or it (and of this the jury are the judges), then it falls within the class of cases qualifiedly privileged and the defendant is entitled to the immunity from liability which such privilege confers, although the matter complained of be not true.

But this privilege accorded to journalists and regular correspondents of the press in writing, and commenting upon current public affairs and matters is not to be abused by using it intemperately or recklessly as an instrument to injure individuals or substantial interests, through

statements or inferences maliciously made, justified neither by the facts nor the occasion.

Every defamatory article in itself contains evidence of malice. Such malice the law implies, and that without any extrinsic proof; but where the conclusion is reached that the communication was qualifiedly privileged on account of the subject, the occasion and the duty, then proof of actual malice is required in order to justify a verdict.

The amount of damages in actions of this character is within the control of the jury under all the facts and circumstances as detailed by the evidence. But when the action is not by the proprietors of a newspaper itself for injury to it, but by a plaintiff who claims to have been the starter, or one of the starters, of the paper, and one of the owners and publishers thereof, and that he has sustained damages by the publication of the article complained of, the damages sustained by the paper itself as such cannot be recovered by him, but only such as he has personally sustained by reason of his connection with the paper in the relations above mentioned.

*N. Y. Circuit, February*, 1834.

This was an action of libel tried before judge VAN VORST and a jury, at a circuit held in New York, February, 1884.

The plaintiff, the publisher of a newspaper in the city of New York called "Truth," sued the defendant for an article written by him and published in the "Cincinnati Enquirer," which plaintiff claimed to be libelous. The defendant was a regular correspondent of the "Cincinnati Enquirer." The matter claimed to be libelous appears in the charge of the court. The plaintiff claimed $20,000 damages. The judge's charge is given below.

*Richard S. Newcombe*, for plaintiff.

*John D. Townsend*, for defendant.

VAN VORST, *J.*— The plaintiff claims to have been one of the starters and the publisher of the newspaper called "Truth." His true relation to the paper appears by the evidence. His complaint against the defendant is that the defendant wrote and published concerning him and the newspaper "Truth" the fol--

Hart agt. Townsend.

lowing matter : " The newspaper ' Truth ' is alleged to have been started for the purposes of plunder." There is no occasion for me to explain these words. Their meaning is obvious. They speak for themselves. By this publication the plaintiff claims to have been damaged, and he seeks redress in this action. It is for you to determine whether or not the plaintiff is entitled to recover, and if so, the amount of his damage. The matter of which complaint is made is, in itself, defamatory, and, unless its publication was justified, actionable. The defendant admits that he published these words, and by his answer to the complaint, says that they were and are true, according to the true intent and meaning thereof. The question which you are called upon to consider and decide under this defense is : were these words true? Was this newspaper, under the evidence detailed before you, started for the purpose of plunder? Evidence has been adduced before you as to the origin of this paper ; by whom, and under what circumstances, means and auspices the enterprise was launched, and how it was afterwards conducted. Do they establish that the paper was started for the purposes indicated in the defendant's article? Was it to be used as an instrument of plunder? If it was, your verdict should be for the defendant. Whether a newspaper was originally started for the purpose of plunder, may be shown by its columns and its conduct. The principle upon which a man's life rests, and by which he is controlled, is shown by his general behavior. We have no other means of judging a man's motive than as it is expressed in his speech and action ; and the motive which inspired the foundation of a newspaper, can be well shown by its own columns, as they speak from day to day. Much matter has been read to you from the newspaper in question. I do not propose to allude to these articles in detail. You will recall them at once. They relate to individuals, to men in public station as also to those in private life, to institutions and to matters of both public and private concern. Evidence has been given of personal interviews and

Hart agt. Townsend.

transactions between the managers and agents of this news-paper and individuals, and now the question is, does this evidence establish that this paper was started for the purpose imputed to it by the defendant? The official conduct of men in public life, and the fitness and claims of candidates for official station are fair subjects for review and criticism in the public prints, and such honest criticism, although it be unfriendly and severe, can give no occasion for the suggestion that it proceeds from unworthy or indirect motives. An independent press may feel constrained, under a sense of duty, to discuss such matters at times with honest plainness, but assaults upon private persons and character are not shielded by the rule which allows publishers of newspapers to review, criticise and energetically oppose the public action of men in official station or those who are seeking it.

You are carefully to consider the quality of these articles which have been read in your hearing from the newspaper "Truth," and you are to determine whether they establish the defense that this paper was started for the purposes of plunder. You should also determine whether or not the evidence of the dealings and transactions of the persons in charge of this paper with individuals or organizations, private or political, show such to have been the purposes of this paper. Much attention has been given in this connection, by the counsel, to the so-called " *Morey letter*," admitted upon this trial by all to have been a forgery. The manner in which this letter was received, its publication by the newspaper "Truth," the denial of its genuineness by General Garfield, and the after-conduct of the proprietors of the paper upon the subject, are all before you. I shall not allude to the various steps taken, nor to the action of these parties, in detail, in respect to this letter and its treatment by the newspaper in question. The evidence is all before you. You will, doubtless, recall and judge it; will determine its true character and what it establishes. You will decide what bearing this subject has upon the issue before you. Whether, on the one hand, the publi-

cation of this letter, under the circumstances, as genuine, and the subsequent action of the managers of the newspaper, in relation thereto, was honestly and in good faith made and carried on; or, on the other hand, whether they tend to establish the truthfulness of that part of the defendant's communication to the "Cincinnati Enquirer," of which complaint is here made. Of this particular subject, as well as the others arising from the evidence, which involve matters of fact, you are the exclusive judges, and it is for you to say whether this defense has been proven.

I have already said to you, and I now repeat it, that if the words published by the defendant are true under the evidence, then the defendant's justification is established; otherwise, not; and you may consider the whole article of the 12th of November, 1880, in determining both the mind of the defendant in writing it, and the defense interposed by him, which we have just been considering. But in the event that you shall find that these words were not true, then it will be your duty to consider another defense interposed by this defendant, which is in substance that the communication to the public, made by the defendant, of which the matter complained of formed a part, was qualifiedly privileged. That is substantially another defense. Under this head, and I beg to call your particular attention to these suggestions, it appears that the defendant is by profession an author and a writer for periodicals and newspapers. He was the regular correspondent of a newspaper published in the city of Cincinnati called the "Cincinnati Enquirer," and his employment, in part, was to write of events transpiring in New York city, and to give information concerning them through its columns by letter or telegraph. A communication made by the defendant to the paper on the 12th day of November, 1880, in the way of his employment and duty, contains the matter of which complaint is made in this action. The Cincinnati paper published it on the following day, the thirteenth of November. If the work of this defendant in preparing and publishing this communica-

Hart agt. Townsend.

tion, including the matter complained of, was in good faith done, and in the honest belief that it was true in statement and comment, and without any indirect motive to injure the plaintiff or the newspaper in question, or ill-will toward him or it, and of this you are the judges, then it falls within the class of cases qualifiedly privileged, and the defendant is entitled to the immunity from liability which such privilege confers, although the matter complained of be not true. The conduct of newspapers and their managers in their treatment through their columns of men and things, is open to criticism and review by other journalists and their regular correspondents. Of the duty of the press to expose fraud and crime and to condemn it, there can be no question. The communication of the twelfth of November, written by the defendant, is largely devoted to the action of the newspaper "Truth" and its publishers, concerning the publication of the so-called "*Morey letter,*" and the proceedings taken to detect and to punish the persons engaged in that forgery. Now, that was a matter of public concern and entirely proper for statement and fair and reasonable comment and inference in the public press. To that extent, the communication of the defendant, a public writer, was, if made by him, believing it to be true, under all the facts and circumstances concerning it, and without malice, qualifiedly privileged. But this privilege accorded to journalists and regular correspondents of the press, in writing and commenting upon current public affairs and matters, is not to be abused by using it intemperately or recklessly as an instrument to injure individuals or substantial interests, through statements or inferences maliciously made, justified neither by the facts nor the occasion. The question arises, and which you are now to consider: Did the defendant abuse the privilege extended to him as a correspondent of the Cincinnati newspaper, and did he use the occasion as a means of gratifying a feeling of malice towards the plaintiff or the newspaper with which he was connected, by alleging that it was started for the purposes of fraud? If he did, then the

quality of privilege is lost and he is liable to damages. Every defamatory article in itself contains evidence of malice. Such malice the law implies, and that without any extrinsic proof, but when the conclusion is reached, as it is in this case, that the communication of the defendant was qualifiedly privileged on account of the subject, the occasion and the duty, then proof of actual malice is required in order to justify a verdict for the plaintiff for the use by the defendant of the words complained of. Therefore, gentlemen, although you should find that the words of which complaint is made are not true, still, in order to justify a verdict for the plaintiff, you are to be satisfied from the evidence that the imputation contained in the defendant's communication concerning the newspaper "Truth" was not a reasonable inference from the facts appearing in evidence, and that the defendant used the occasion and wrote the words complained of from a wrong motive and to gratify ill-feeling toward the plaintiff or his newspaper; and this state of mind must be affirmatively proven by the plaintiff, or he cannot recover.

The only remaining subject is one of damages, but that subject need only be considered in the event that the previous issues are decided in the plaintiff's favor. The amount of damages in actions of this character is within the control of the jury under all the facts and circumstances in evidence. But this is not an action by the proprietors of "Truth" itself for an injury to it, or for damages it has sustained, but by a plaintiff who claims to have been the starter, or one of the starters, of the paper, and one of the owners and the publisher thereof, and that he has sustained damages by the publication of the article. The damages, if any, sustained by the paper itself as such cannot be recovered by him, but only such as he has personally sustained by reason of his connection with the paper in the relations above mentioned. As a matter of course the character of the paper itself may be taken into consideration in this connection. The true character of a newspaper is well shown by the matter which it publishes from day to day.

That discloses its real worth and mission. Your attention has been called to such matter, and from it you will determine whether the character of the newspaper was generally good or bad, and what damages the plaintiff has sustained through his connection with it by occasion of the publication of the matter by the defendant, of which complaint is made. Of this you are the judges under the evidence.

The jury brought in a verdict for fifty dollars damages.