THEODORE S. COOGLER, PLAINTIFF IN ERROR, VS. NAPOLEON B. RHODES, DEFENDANT IN ERROR.

1. A leading question has been defined as one which may be answered "yes" or "no." This is not the most usual definition, or the one most exactly fixing the meaning of the term. The proper signification of the expression is a suggestive question, one which suggests or puts the desired answer into the mouth of the witness.

2. A question addressed to a witness in examination is not necessarily leading because it can be answered "yes" or "no." A leading question is one that points out the desired answer, and not merely one that calls for a simple affirmative or negative.

3. An interrogatory which merely asks a witness if he has any knowledge as to a fact which is in issue between the parties, and directs him if he has such knowledge to state the extent of the same is not objectionable upon the ground of being a leading question.

4. The great primary object in the examination of witnesses is to make known the truth of the matters in controversy. Great nicety upon the subject of leading questions is not conducive to this object, or to convenience in examination, or to the administration of justice.

5. In an action of libel, evidence tending to show good ground for suspicion of the truth of the matter alleged to be false is material for the defendant under a plea of not guilty, not to prove the truth of the charge, but as tending to show a less degree of malice, and in mitigation of the damages to which plaintiff is entitled. Such evidence is also material under a plea of privileged communication as a circumstance to be considered by the jury as to whether the alleged libelous language was published through the express malice of the defendant.

6. In actions of libel, those publications which are considered privileged are divided into two classes: absolutely privileged, and conditionally or qualifiedly privileged.

7. A definition of a qualifiedly privileged communication, especially applicable to the facts of the present case, is as follows: where a person is so situated that it becomes right, in the interest of society, that he should tell to a third person certain facts, then if he *bona fide*, and without malice, does tell them, it is a privileged communication.

8. In the case of a qualifiedly privileged publication, if the matter is stated in accordance with the above definition, with good motives, and upon reasons apparently good, the publisher will not be liable if the matter stated should turn out to be untrue.

9. In cases of qualifiedly privileged publication, the presumption which attends cases not so privileged of malice from the publication of libelous language does not prevail; the burden of proof is changed, and, in order for the plaintiff to recover, he is called upon affirmatively and expressly to show malice in the publisher. This malice may be inferred from the language itself, or may be proven by extrinsic circumstances. While the malice may be inferred from the publication itself, it is not inferrable from the mere fact that the statements are untrue. The existence or non-existence of such malice where the facts are controverted is a question of fact for a jury.

10. That which would otherwise be a qualifiedly privileged publication is not so if the publisher is actuated by malice.

11. A letter from an elector of this State to the Governor thereof, in reference to the character and qualifications of an applicant to said Governor to be appointed sheriff of the county in which such elector resides, is not an absolutely privileged, but is a qualifiedly or conditionally privileged publication. The publisher of such a letter can not under the guise of such a communication falsely and maliciously traduce and slander the moral character of such applicant, and if he does so, he makes himself liable to an action therefor. On the other hand, such applicant can not recover damages for any statements in such publication, unless the same were both false and malicious.

12. In such cases of privileged publication as are described in the preceding head–note, although the alleged libelous matter can not be shown to be true by the publisher, yet if there was

reasonable ground for him to suppose it to be true, and it was published by him in good faith under an honest belief that it was true in statements of fact and in comment thereon, and was published with motives for the public good, without any private personal malice toward the plaintiff, the publisher is not liable to damages therefor.

Writ of Error to the Circuit Court for Hernando county.

The facts in the case are stated in the opinion.

*Angus Patterson*, for Plaintiff in Frror.

*Carter & Wall*, for Defendant in Error.

LIDDON, J.:

During the month of May, 1890, there was a vacancy in the office of sheriff of Hernando county. The Honorable Francis P. Fleming, then Governor of the State of Florida, had appointed the defendant in error to fill said vacancy, but the commission upon such appointment had not been issued and delivered. The plaintiff in error being a citizen and elector of this State resident in said county, and opposed in sentiment to the issuing of such commission, sent a letter to the Governor upon the subject. The plaintiff in error, hereinafter called the defendant, in such letter used the following language of the defendant in error, hereinafter called the plaintiff, *viz:* " * * It is a notorious fact that for years he has run the only house of prostitution here, and his mistress has been indicted in our courts." The plaintiff, by his amended declaration, brought his action for libel against the defendant on account of the words above quoted, alleging that they were falsely and maliciously written and

published of the plaintiff. No special damage was alleged in the declaration. The defendant filed six pleas. The second, third and fourth were stricken out upon motion. Issue was joined and trial had upon the first, fifth and sixth pleas. The first plea was, not guilty. The fifth, in substance, admitted the publishing of the alleged libelous language, but stated that it was written without malice toward the plaintiff, and was a privileged communication upon which the action could not be maintained. The sixth plea admitted publishing the alleged libelous language, but plead justification, in that the same was published without malice to the plaintiff, with good motives, and the same was wholly true.

No question of the inconsistency of these pleas with each other was raised in the court below or in this court. Therefore in this opinion in considering questions of admissibility of evidence, we have considered the same with reference to all or either of the pleas upon which issue was joined and trial had.

The errors assigned and argued involve the correctness of the ruling of the court in excluding certain evidence offered by the defendant, and the general question whether the communication containing the alleged libelous matter was not a privileged publication for which no action would lie. One of the rulings excluding testimony complained of was in relation to the depositions of one W. D. Sims, a witness for defendant, taken upon commission in the State of Alabama. The following written interrogatory was addressed to this witness: "Inter. 4. State whether or not you know that said Napoleon B. Rhodes ran a house of prostitution in the town of Brooksville, Hernando county, State of Florida; and if yes, when and for

how long a time?'' The answer was to the effect that
the witness did not know positively as to the matter
inquired about, but that it was generally supposed
that the plaintiff was concerned in the management of
such house of prostitution. The objection upon which
the question was excluded was, that it was leading.
In what respect it was claimed to be leading is not
specified. Among other definitions, a leading ques-
tion has been defined as one which may be answered
yes or no. This, however, is not the most usual defi-
nition, or the one most exactly fixing the meaning of
the term. The proper signification of the expression
is a suggestive question, one which suggests or puts
the desired answer into the mouth of the witness. It
has also been said that a question which assumes the
existence of material facts which have not been proven
is leading. 1 Thompson on Trials, sec. 358 and au-
thorities cited in notes to the text; Rapalje & Law-
rence Law Dict., *Title* Leading Question; Anderson's
Law Dict., *Title* Question, *sub-title* Leading Question;
People vs. Mather, 4 Wend. 229, S. C. 21 Am. Dec.
122; 1 Greenleaf on Evidence, sec. 434. We agree
with the Supreme Court of Michigan, that a question
is not necessarily objectionable as leading because it
can be answered ''yes'' or ''no,'' and that a leading
question is one that points out the desired answer, and
not merely one that calls for a simple affirmative or
negative. McKeown vs. Harvey, 40 Mich. 226. The
case of Harvey vs. Osborn, 55 Ind. 535, is also to sim-
ilar effect as the Michigan case. Tested by the above
definitions, the question excluded was not a leading
question. The whole inquiry is not one which could
be answered by a simple ''yes'' or ''no.'' Neither
does it suggest to the witness or put the desired an-

swer in his mouth, making the witness a mere echo of the matters asserted by the counsel conducting the examination. While it is perhaps not in as good shape as should have been, and if it had been propounded upon an oral examination in open court, instead of being prepared in writing for the taking of depositions, upon suggestion of the court, might have been made more correct and formal, yet we do not think it assumes any fact to have been proven in the case. The whole interrogatory merely asks the witness if he has any knowledge as to a fact which is in issue between the parties, and directs him if he has such knowledge to state the extent of the same. Questions very similar in form were upheld as not being leading in Harvey vs. Osborn, *supra*. A question which merely directs the attention of the witness to the fact in controversy is not leading. 1 Thompson on Trials, sec. 360. The great primary object in the examination of witnesses is to make known the truth of the matters in controversy. Great nicety upon the subject of leading questions is not conducive to this object or to convenience in examination, or to the administration of justice. McKeown vs. Harvey, 40 Mich. 226. As the witness did not know anything of his own knowledge, but only spoke from hearsay or general reputation, it is claimed by plaintiff that the evidence was wholly immaterial, and that the error, if any, in its exclusion was harmless. The evidence excluded tended to show good ground for suspicion of the truth of the matters alleged to be false. (Rigden vs. Wolcott, 6 Gill & J. 413, text 418), and therefore was clearly material to the issues joined in the case. It was material under the plea of not guilty, not to prove the truth of the charge, but as tending to show a less degree of malice

and mitigating the damages to which plaintiff was entitled. Jones, Varnum & Co. vs. Townsend, 21 Fla. 431. The evidence was also admissible under the plea of privileged communication, as a circumstance to be considered by the jury as to whether the alleged libelous language was published through the express malice of the defendant. Montgomery vs. Knox, 23 Fla. 595, 3 South. Rep. 211.

The defendant offered in evidence several appearance bonds or recognizances executed by the plaintiff as a surety for one Minnie Cameron, charged with keeping a disorderly house, and for one Millie Lawrence, Edna Gray and Ethel Sexton, respectively, charged with lewdness. It appears from the undisputed evidence in the case that these four women were public prostitutes. Minnie Cameron, the first named, was the proprietress of a house of ill-fame, and the others were regular inmates thereof. There was also much evidence tending to prove general suspicion that Minnie Cameron was a kept mistress of the plaintiff, and that he visited the house and had business dealings with said Minnie Cameron. The court admitted the bond of Minnie Cameron, but excluded those of the other women. This ruling was erroneous in excluding some of these bonds. Admitting that this evidence did not tend to show that the plaintiff actually "ran" or managed a house of prostitution, yet the fact that he was on such terms with its proprietress and its inmates as to be willing to risk large pecuniary liability (as shown by the bonds) for their benefit, was a fact which at least should have been submitted to the jury in connection with the other evidence in the case for the purpose of mitigating the damages for the reasons hereinbefore stated in refer-

ence to the error in excluding the interrogatory addressed to the witness W. D. Sims. It is claimed by plaintiff that the error in excluding this testimony was harmless for the reason that the plaintiff upon cross-examination himself admitted that he had signed some bonds for these parties. The record, however, shows that the admission was very indefinite. The plaintiff did not seem to recollect with what offense the parties were charged, nor whether the instruments were appeal or appearance bonds; neither did he state the amount thereof. From the exclusion of the bonds themselves when offered in evidence the jury evidently got the idea that the fact of signing these bonds by the plaintiff was a matter of no consequence in the case. As the evidence would have been valuable to the defendant in mitigation of damages, and as the jury rendered a verdict for the large amount of $5,000, under the circumstances of the case we can not say that the amount of the verdict would not have been affected by the evidence if the jury had been permitted to hear it. Therefore the error does not appear to have been a harmless one.

The last and most important question in the case arises upon the assumption of the defendant that the letter containing the alleged libelous words was a privileged communication, and that no action would lie upon the same. It is deemed proper to observe here in speaking of a publication, the nature of which exempts the publisher from an action of libel for matters therein stated, the better term is a privileged publication, instead of a privileged communication. Though these terms are often used interchangeably and as synonymous, the term privileged communication in its ordinary signification has reference to that

class of written messages which either entitles or obliges the party to whom they are communicated to withhold the disclosure of matters thereof. Townshend on Slander & Libel (4th ed.), sec. 208. The term privileged publication is the one which has been used by this court. Montgomery vs. Knox, 23 Fla. 595, text 604, 3 South. Rep. 211. Privileged publications are divided into two classes; absolutely privileged, and conditionally or qualifiedly privileged. Townshend on Slander & Libel (4th ed.), sec. 209. The term absolute privilege has reference to words spoken or written in certain legislative and judicial proceedings. As we do not consider the publication in question as falling under this class of privilege, we will not attempt definitions of the same. Various definitions, with differing and refined shades of meaning, have been given of what constitutes a conditionally privileged publication. Some of them will be found in the following authorities: Townshend on Slander & Libel (4th ed.), sec. 209; Odgers on Libel & Slander, p. 196 *et seq.*; Cook vs. Hill, 3 Sandf. 341. That general definition which more nearly fits the circumstances of the present case is as follows: "Where circumstances exist, or are reasonably believed by the defendant to exist, which cast upon him the duty of making a communication to a certain other person, to whom he makes such communication in the *bona fide* performance of such duty." Odgers on Libel & Slander, p. 198. Perhaps the following is more especially applicable: "Where a person is so situated that it becomes right, in the interests of society, that he should tell to a third person certain facts, then, if he *bona fide*, and without malice, does tell them, it is a privileged communication." This definition is considered more

exact in leaving out the word *duty*, because it is priv-
ileged in the interests of society for a man to *bona
fide* and without malice say those things which no
positive legal duty may make it obligatory upon him
to say. Townshend on Slander & Libel (4th ed.), sec.
209. That the matter stated in accordance with above
definitions with good motives, and upon reasons ap-
parently good, should turn out to be untrue will not
render the publisher liable. State vs. Burnham, 9 N.
H. 34, S. C. 31 Am. Dec. 217; Moore vs. Butler, 48 N.
H. 161; Toogood vs. Spyring, 1 Crompton, Mess. & R.
181, S. C. 4 Tyrwh. 582. In cases of qualifiedly priv-
ileged publications the presumption which attends
cases not so privileged of malice from the publication
of libelous language does not prevail; the burden of
proof is changed, and, in order for the plaintiff to re-
cover, he is called upon affirmatively and expressly to
show malice in the publisher. This malice may be in-
ferred from the language itself, or may be proven by
extrinsic circumstances. While the malice may be
inferred from the communication, it is not inferrable
from the mere fact that the statements are untrue.
The existence or non-existence of such malice, where
the facts are controverted and there is evidence upon
the subject, is a question of fact for a jury. Town-
shend on Slander & Libel (4th ed.), sec 288, and author-
ities cited in notes to the text; Pattison vs. Jones, 8
Barn. & Cress. 578; White vs. Nicholls, 3 How. 266,
text 285 *et seq.* That which would otherwise be a
qualifiedly privileged publication is not so if the pub-
lisher is actuated by malice. White vs. Nicholls,
*supra*, text 291; Montgomery vs. Knox, 23 Fla. 595,
text 609, 3 South. Rep. 211. This latter case does not
draw any distinction between the two classes of priv-

ileged publications. It states, in effect, (ninth head-note, and also in the text) that a publication in regard to business by one having an interest therein, and only to others having an interest, is privileged, and the privilege furnishes a good defense in a suit for libel, unless it can be shown that the publication was made from express malice; in which case the privilege does not avail. This decision is of undoubted correctness in its application to the facts of the case adjudicated. The general proposition of law, however, would have been more clearly expressed if the court had used the words "qualifiedly" or "conditionally," in connection with the word "privileged," because it seems that the question of malice does not enter into cases of abso-lute privilege. Cooley on Torts (2d ed.), top page 247 *et seq.* In cases of absolute privilege, an action can not be sustained even where there is express malice.

Communications to the appointing power with ref-erence to the character and qualifications of candidates for public office have been often given as illustrations of qualifiedly or conditionally privileged publications. White vs. Nicholls, and Cook vs. Hill, *supra;* Com-monwealth vs. Wardwell, 136 Mass. 164; Cooley on Torts (2d ed.), top page 251. In such cases no action will lie for false statements in the publication unless it be shown that they are both false and malicious, and the burden of proof in this respect rests upon the plaintiff. Cooley on Torts, p. 251 and authorities in note 3; Wieman vs. Mabee, 45 Mich. 484, 8 N. W. Rep. 71; O'Donaghue vs. McGovern, 23 Wend. 26.

Applying the law to the facts of this case, the letter of the defendant, an elector of this State resident in Hernando county, to the Governor of the State, in reference to the character and qualifications of the

plaintiff, who was an applicant to said Governor to be appointed sheriff of said county, was not an absolutely privileged, but was a qualifiedly or conditionally privileged publication. The defendant could not under the guise of such a communication falsely and maliciously traduce and slander the moral character of the plaintiff, and if he does so, makes himself liable to the action; Jones vs. Greeley, 25 Fla. 629, 6 South. Rep. 448. Upon the other hand, the plaintiff can not recover damages for any statements of matters affecting his moral or other qualifications for the office for which he was a candidate, when made by an interested citizen to the appointing power, unless such statements were both false and malicious. Upon proper issues made such falsehood and malice become issues of fact to be determined by the jury, guided by the rule stated, that the burden of proof is upon the plaintiff to affirmatively show the same. In such cases, although the alleged libelous matter should not be shown to be true by the defendant, yet if there was reasonable ground for him to suppose it to be true, and it was published by him in good faith under honest belief that it was true in statements of fact and in comment thereon, and was published with motives for the public good, without any private personal malice toward the plaintiff, then defendant is not liable to damages therefor. Hart vs. Townshend, 67 How. Pr. 88.

The judgment of the Circuit Court is reversed and a new trial awarded.