**OLSEN v. KENNEDY, et al.**

No. 78-7328-CA.

Circuit Court, Duval County.

March 7, 1979.

Gary A. Benson of Johnson & Benson, Jacksonville, for the plaintiff.

George D. Gabel, Jr. of Wahl & Gabel, Jacksonville, for the defendants.

MARION W. GOODING, Circuit Judge.

*Final summary judgment on jurisdiction as to defendant Louis J. Kennedy:* The plaintiff has attempted to obtain jurisdiction in this slander suit over Louis J. Kennedy ("Kennedy"), an officer of Louis J. Kennedy Trucking Company ("Kennedy Trucking") under Florida's long-arm statute, §48.193(1)(b), Florida Statutes, which extends the jurisdiction of the Florida courts to include a non-resident who "[c]ommits a tortious act within the state."

Defendant Kennedy has moved for summary judgment on the issue of jurisdiction.

Based upon the depositions and affidavit on file, the court finds as follows —

1. Kennedy is a New Jersey resident.

2. Kennedy Trucking is a New Jersey corporation with a terminal at Jacksonville, Florida.

3. In the course of its business, Kennedy Trucking was furnished and maintained an office at the plant of D. G. Shelter Products, Inc., ("Shelter") in Jacksonville, where Kennedy Trucking handled all of Shelter's transportation needs under an arrangement with Hearin Transportation, Inc. ("Hearin"), a sister company to Shelter.

4. The plaintiff was Kennedy Trucking's representative at Shelter from at least November, 1977 until his discharge by Kennedy Trucking on May 3, 1978.

5. On May 4, 1978, following the discharge of plaintiff, Kennedy had an occasion to speak by telephone with Gardner A. Goodrich ("Goodrich"), Vice President for Hearin. Goodrich was in Portland, Oregon, at the time of the telephone conversation, and Kennedy was in New Jersey. Kennedy may have expressed the opinion to Goodrich at that time that one of the reasons that plaintiff was discharged was that plaintiff had become an agent for one of Kennedy Trucking's competitors.

6. A week or two after plaintiff's discharge, Kennedy was in Jacksonville and spoke with Carl Hastings ("Hastings"), general manager for Shelter, at which time Kennedy made general comments to Hastings about plaintiff to the effect that they had reason to believe that plaintiff was undermining the Kennedy Trucking position at Shelter and that he might have been doing some work with some other trucking companies that was not in the benefit of Kennedy Trucking or Shelter.

7. The Florida long-arm statute requires that for Florida courts to assert jurisdiction over a non-resident for the tort of defamation, the defamatory act must be committed within the state. In slander actions, the place of wrong is the place where the defamatory statement is communicated. *Restatement of Conflicts of Laws*, §377 at page 457.

8. The statements attributed to Kennedy were qualifiedly privileged because of the business relationship between Kennedy and Hastings. See *Belcher v. Schilling*, 349 So.2d 185 (Fla., 3d D.C.A., 1977), where the court states at page 186 —

> "A communication made in good faith on any subject matter by one having an interest therein or in reference therein or in reference to which he has a duty is privileged if made to a person having a corresponding interest or duty even though it contains matters which would otherwise be actionable and though the duty is not a legal one but only a moral or social obligation"

In 53 C.J.S., *Libel and Slander* §107, it is stated—

> "A communication derogatory of the character of an employee may be qualifiedly privileged by reason of either interest or duty. Generally such matter is qualifiedly privileged . . . if published by an employer in order to protect himself against the acts or statements of a present or former employee."

9. There is no evidence of lack of good faith on the part of Kennedy in his communications, and it was plaintiff's burden to present such evidence. In *Abram v. Odham*, 89 So.2d 334 (Fla., 1956), the Supreme Court of Florida stated at page 336—

> "It should first be noted that in cases of qualified privilege, 'the presumption which attends cases not so privileged of malice from the publication of libelous language does not prevail. The burden of proof is changed, and, in order for the plaintiff to recover he is called upon affirmatively and expressly to show malice in the publisher.' Coogler v. Rhodes, 38 Fla., 240, 21 So. 109, 112. If the uncontroverted facts are equally consistent with either the existence or nonexistence of malice, there can be no recovery, for 'there is nothing to rebut the presumption which has arisen in favor of the defendant from the privileged publication.' Myers v. Hodges, 53 Fla., 197, 44 So. 357, 365. Evidence of malice may be either intrinsic, that is, inferable from the very nature of the defamatory language itself, or extrinsic. Myers v. Hodges, supra, 44 So. 357. But while malice may be inferred from the nature of the communication itself, it cannot be inferred from the mere fact that the statements are untrue. Coogler v. Rhodes, supra, 21 So.109."

10. The depositions and affidavit on file show that there is no issue as to any material fact and that the defendant, Louis J. Kennedy, is entitled to judgment as a matter of law.

Therefore, it is ordered and adjudged —

(1) The motion for summary judgment is granted.

(2) This action is dismissed as to defendant, Louis J. Kennedy, there having been no tort committed in the state of Florida.