Parker, C. J.,
delivered the opinion of the Court. The plaintiff in this action is described as a minister and preacher of the gospel, legally settled and ordained over the church and religious society of the congregational denomination in the town of Hanover ; and the defendant is charged with having falsely and maliciously uttered * and published of him certain words, which, with the proper innuendoes, have the effect of a direct charge upon the plaintiff of having been drunk ; and this charge was made in terms which exclude the possibility of a construction consistent with the innocence of the plaintiff, being accompanied with terms of opprobrium and contempt, which necessarily aggravate the imputation in the mind of the hearers.
By the verdict of the jury it is established, that the defendant spoke the words, as alleged, in reference to the plaintiff, and that they were falsely and maliciously spoken ; and it is understood, that an attempt, which was made at the trial, to justify the publishing by proving the truth of the words, wholly failed.
The general question, then, which the motion presents is, whether falsely and maliciously to charge a settled minister of the gospel with being drunk, and with having had a drunken frolic, so that he was unable to go home, but staggered towards another house, where he remained all night, is an actionable slander, without alleging and proving some special damage happening to the party in consequence of such slander.
*206 And of this we cannot entertain a doubt for a moment, whether we refer to the general principles upon which actions of defamation are founded, or to the technical rules which have been applied to such actions in thenum erous decisions which have taken place in the common-law courts of England and in this country.
In a note to the fourth edition of Chief Baron Comyn’s Digest (5) it is observed, and we think with justice, that “ there is no branch of the law, in which the decided cases are so contradictory to each other, and the decisions so frequently irreconcilable with the avowed principles on which they are founded, as the action on the case for words ” ; and it is further observed, that “ what words are actionable or not will be more satisfactorily determined by an accurate application of the principles on which * such actions depend, than by a reference to adjudged cases, especially those in the more ancient authors.”
It may be laid down as a general principle, that all defamatory words, published maliciously of another, are actionable; because, being injurious to the reputation, and having a tendency to affect the business or comfort, of the party against whom they were spoken, it is suitable and proper that a remedy should be provided by the laws.
Some words, however, although spoken falsely aud maliciously, are not of a nature to produce actual injury ; because, being common terms of reproach, more indicative of the temper of the speaker than of any specific defect of character in him of whom they are spoken, it cannot be presumed that they have produced any injurious effect; and, therefore, to make such words the basis of an action, it is ne cessary to allege and prove that some damage did actually follow the speaking of the words. Thus it is, that words importing crime in the party against whom they are spoken, which, if true, would subject him to disgraceful punishment, or imputing to him some foul and loathsome disease, which would expose him to the loss of his social pleasures, are actionable without any special damage. While words, perhaps equally offensive to the individual of whom they are spoken, but which impute only some defect of moral character, such as, that he is a rascal, liar, cheat, &c., are not actionable, unless a special damage is averred, or unless they are referred, by what is called a colloquium, to some office, business, or trust, which would probably be injuriously affected by the truth of such imputations. Tor in these latter cases, as well as in the cases of words actionable in themselves, although no special damages may be proved, yet it is supposed that the slander is of a nature to cause a gradual, and perhaps imperceptible, damage; which may eventually amount to a serious injury, if it *207 is suffered to pass without the animadversion of the law ; and, therefore, probable loss or damage is * sufficient ground of action, and the proper degree of compensation is to be estimated by a jury.
But, besides the classes of cases in which words have been decided to be actionable because they impute crime or disease, and that where they become so by the proof of special damage, there is another class, in which words, otherwise held not to be actionable, become so by reference to certain offices of dignity or trust, because they import a disability to exercise those offices, and expose the slan dered person to the loss of them, and have a tendency to render the office itself contemptible in the eyes of the community. Thus, to say of any public officer, when speaking of his office, that he is a corrupt man, or that he has violated his trust, would subject the offender to an action, without an allegation of damage ; and it is laid down by Lord Chief Justice De Grey, in the case of Onslow vs. Horne, (6) as one of the general rules governing this action, that words are actionable, when spoken of one in an office of profit, which may probably occasion the loss of his office, or when spoken of persons touching their respective professions, trades, and business, and do or may probably tend, to their damage.
Upon this principle it has been held in England, that to call a clergyman a drunkard is actionable ; for intemperance would render him unfit to sustain the sacred office, and expose him to the loss of it, as well as of preferment in the church. It has been attempted, in the case under consideration, to avoid the force of this example, by suggesting a distinction in the offices of a minister in the church of England and a minister of a parish or other religious society in this country. But we see no principle upon which this distinction can be maintained unfavorably for the present action. There is a difference in the mode of appointment, the inferior clergy in England being generally appointed to their particular cures by patrons, and the superior by the crown substantially. Nor is there in this country any thing like preferment in the church. * But the essential qualities of the office are the same in both countries ; ministers of the gospel being teachers and exemplars of moral and Christian duty; and a pure and even unsuspected moral character being necessary to their usefulness in the community. If they would be liable to the loss of their office for the gross vice of intemperance in England, they are not less exposed to the same just punishment here. For there is no doubt, that a charge of that nature, substantiated by proof before the tribunals which, by custom, nave the right, upon the application of a religious society, to inquire into *208 the character of their minister, would result in his dismissal from office. And so essential is an unspotted character to the salutary administration of the ministerial office that even a reputation for immorality, although not supported by full proof, might, in some cases, be a sufficient ground for removal., So that slander of a person thus delicately situated is much more reprehensible, and is attended with much more pernicious consequences, than when uttered against officers of any other description. In the case of Jlvery vs. The Inhabitants of Tyringham, (7) it was said, that immoral conduct, of which intemperance would certainly be evidence, is such a misfeasance in a minister as amounts to a forfeiture of his office, of which a jury might take notice, if well proved, in a suit for his salary.
But it has been said, that, although to call a minister a drunkard may be actionable, because it stigmatizes his general character, and imputes habitual intemperance, yet to charge him with an incidental act of drunkenness has not such consequences ; because a particular fact of this sort may be consistent with general sobriety of conduct, and may be referred to accident or even imposition.
In answer to this, it may be observed, that the old rule of taking words in mitiori sensu is exploded, and the more sensible course is, to give the natural meaning and effect to the terms, according to the spirit and temper in which they appear to have been used. In other words, when they * appear to have been spoken maliciously, such a meaning is to be attached to them as will be consistent with malice ; and of this the jury are to judge, who will never give damages, if the defendant shall show that he intended no slander, and if the words spoken are such as may have an innocent construction. But the verdict in this case has established the malice ; and, indeed, from the opprobrious terms used in promulgating the fact, as well as from the repetition of it in another form of words equally offensive, there was no room to suppose the defendant .nnocent of an evil intent in speaking them. As to the supposed difference between a general charge of drunkenness and one particular fact, this can only be important in the estimation of damages, and has probably been taken into view. One act of intoxication will, with the world, be presumptive evidence of habitual intemperance ; and it will be naturally thought, that a vice is indulged in secret, of which there has been one public exposure. To say of a man, that he has stolen the most trifling article which can be the subject of larceny, is, in a legal point of view, as slanderous as to say, that he is a thief; although, in moral estimation, there might be a difference between *209 him who should steal bread for famishing children, and him who should rob without any circumstances of extenuation.
With respect to the supposed want of a colloquium, referring the words to the plaintiff in his ministerial character, the very nature of the imputation shows, that no such colloquium is necessary to be alleged. Had it been averred, that the words were spoken of and concerning the plaintiff in his ministerial capacity, there would be an implication, that, unless a minister was intoxicated while in the public exercise of his functions, such a charge might be made against him with impunity. But a minister of the gospel is separated from the world by his public ordination, and carries with him constantly, whether in or out of the pulpit, superior obligations to exhibit, in his whole deportment, the purity of that religion which he professes to teach. He is as much in office when retired to the bosom of his * family as when employed in public duties ; and his example in the practice of all the moral virtues, and particularly of temperance, is not the least of the duties incurred by his profession.
Upon these grounds we are satisfied, that the declaration is sufficient, and that the motion in arrest of judgment must be overruled.

Judgment on the verdict.

 Vol. 1, page 273.

 3 Wils. 177.

 3 Mass. Rep. 181