JAMES W. SHEAHAN *et al.*, Appellants, *v.* JOHN COLLINS, Appellee.

APPEAL FROM COOK.

In an action for libel, the defendants being publishers of a newspaper, cannot show that a similar publication to that complained of had shortly previous appeared in another newspaper.

The general character of the plaintiff may be shown, but witnesses should not be permitted to give in detail all the reports in circulation to his prejudice.

The plea of the general issue, admits that the plaintiff was innocent of the charges against him, of which he complains.

A defendant in such a case may show, in mitigation of damages, the general bad character of the plaintiff, and may show any fact which tends to disprove malice.

The truth of the libel can only be shown under a plea of justification.

THIS was an action of libel, commenced by defendant against the plaintiffs in error, in the Cook County Circuit, was tried at the November term thereof, 1857, before MANIERRE, Judge of said court, presiding, and a jury.

The libel complained of, was an article published in the Chicago Daily Times newspaper, of Dec. 24th, 1856, and is as follows, to wit:

A ROBBER AT LARGE.—The hack driver, John Collins, who, as we stated the other day, was arrested for robbing a countryman named Blanchard, instead of being held for trial was set at liberty, and is again ready to entrap and rob the first stranger who is green enough for his purposes.

This scoundrel is one of the most adroit thieves and robbers in Chicago. He has been frequently arrested for crimes, of the commission of which there is no more doubt that he was guilty, than there is that they were committed; yet in every instance he has managed to escape justice, generally through the agency of false swearing. Not long ago, when Collins was brought up for stealing a large number of trunks, although no one entertained a doubt of his guilt, he was set at

liberty, in consequence of the testimony of a number of witnesses (hackmen) who swore positively in his favor. Afterwards the same witnesses had the boldness to admit publicly that they received $50 each for swearing Collins clear. Why they were not indicted for perjury is more than we can account for.

We do not doubt that the same instrumentality was made use of by Collins in the present case. He was discharged upon the testimony of hackmen, (whose names we have not at hand,) who perjured themselves for his benefit. However astonishing it may appear, this is no uncommon practice among hackmen. With rare exceptions they are leagued together for purposes of rascality, and scruple not to resort to any means to screen each other from detection and punishment. The best advice we can give to strangers, is, have nothing to do with them.

We are not apprised whether Collins still retains his hackman's license.

The defendants below plead the general issue.

Upon the trial of the case below, it was admitted that the plaintiffs in error, Sheahan and Cameron, were the publishers and proprietors of the paper in question, and that all of the defendants were connected with the publication of the alleged libel.

Upon the trial, one *Martin White* being called as a witness for plaintiff below, testified : " I saw the article in the Times in regard to Collins ; called his attention to it on a Sunday, in the Rock Island House. He asked me to go with him to the Times office to see the editors about it. I went there with Collins ; saw Mr. Cameron ; no other person was there. Collins asked Cameron if that was his paper, to which the reply was, yes. He then showed *the article* and asked him to *retract it*, as it was wrong and injurious to him, his business and his family. Mr. Cameron said that Mr. Matteson wrote the article, and if it was wrong, he would have Mr. Matteson correct it," etc.

Upon the examination of *William M. Douglass* a witness for the defense, the following questions were put to said witness :

Ques. Were there any reports current prior to December 24th, 1856, in regard to his being generally suspected of theft and robbery ?

Ans. There were.

Ques. What were those reports ?

Objected to by counsel for plaintiff, and the court sustained the objection. To which decision of the court, counsel for the defense excepted.

The same question, with the same objection and ruling of the court, occur in relation to the testimony of Joseph Kellogg, and other witnesses.

Upon the examination of *C. P. Bradley*, a witness for the defense, the question was asked of him : Do you know of any reports current in the neighborhood of defendants' residence in

regard to plaintiff having got himself discharged from the accusation to which you have referred, by the subornation of witnesses?

Objection raised by plaintiff's counsel.   Court sustained the objection, to which decision of the court the defendants objected.

Defendants below, after the introduction of a large number of witnesses, showing the bad character of the plaintiff in mitigation of damages, further offered in evidence an article published in another newspaper printed in Chicago, on the day before the publication of the libel in this suit, that is to say, an article published in the Chicago Journal, on the 23rd December, 1856, containing substantially the same facts and charges as published in said libel of the Times, and further offered to show in connection with said article, that the said charges had become matter of general suspicion and public rumor against the plaintiff, this testimony being offered in mitigation of damages, and not to establish the truth of the charges contained in the libel.

Plaintiff's counsel objecting, the court ruled out the testimony, to which ruling of the court the defendants excepted.

The court gave to the jury the following instructions for the plaintiff below, to the giving of which the defendants excepted:

1.   If the jury believe, from the evidence, that the defendants published the libel as charged in the declaration, then the plaintiff is entitled to recover.

2.   The evidence offered by the defendants in regard to plaintiff's general character, is evidence not in justification of the alleged libel, but excuse or extenuation, and for the purpose of diminishing the amount that the plaintiff is entitled to recover.   If the plaintiff has proved the publication of the libel as alleged, then he is entitled to a verdict, and the amount of that verdict is to be determined by all the evidence in the case.

3.   In this case, the defendants, by their plea of not guilty, admit that the *plaintiff is not guilty of the charge alleged* in the libel, as charged in the declaration; all the evidence admitted to the plaintiff's general character, and the existence of general reports and rumors, was received, not for the purpose of showing the plaintiff's guilt, *his innocence being admitted,* but this evidence was received in excuse and in diminution of the amount of damages, and for no other purpose.

4. If the jury believe, from the evidence, that the libel was published, as charged, then the plaintiff is entitled to recover. The amount of the recovery is to be determined by all the evidence and circumstances proved in the case; and in determining such amount, the jury will consider the character of the charge, the general reputation of the plaintiff at the time of the publi-

cation complained of, whether the defendants *had an opportunity to retract the charge,* whether maliciously made and persisted in, and whether made as public journalists, and for laudable purposes, and without malice, and also the plaintiff's general character, and all the facts proved in the case having a reference to this subject.

The jury returned a verdict for plaintiff of $358.

The errors assigned upon the record are —

The refusal of the court to grant a new trial.

The refusal of the court to permit the testimony of Bradley and other witnesses, as to the character of the reports in general circulation affecting the plaintiff's character, in mitigation of damages.

The refusal of the court to permit the defense to show other newspaper publications to the same purport as the libel, in mitigation of damages.

The instructions of the court that by the plea of the general issue we *admitted the innocence of the plaintiff, and that he was not guilty of the charge contained in the article,* when the only issue raised upon the pleadings was our own innocence or guilt in the publication charged against us.

The court erred in assuming the fact by the 4th instruction of said plaintiff, that an *opportunity to retract* the charge contained in the libel had been offered defense by a demand to do so, when the fact as shown, was, that the demand to retract had been made of another and different article than the one proven as the libel before the jury.

THOS. HOYNE, and J. LYLE KING, for Appellants.

C. S. CAMERON, for Appellee.

WALKER, J. It was insisted that the court below erred in refusing to permit defendants below, to show in evidence, that a similar publication to the one made by them had appeared in another newspaper in the city shortly before that published by them. It seems to be the doctrine that a defendant in an action for slander or libel may mitigate damages in two ways. First, by showing the general bad character of the plaintiff, and second, by proving any facts which tend to disprove malice, but which do not tend to prove the truth of the charge. *Reginer* v. *Cabot*, 2 Gilm. R. 140. Its truth can only be shown under a plea of justification, and hence any evidence tending to show its truth, would be in violation of the rule. Anything which tends to show that the plaintiff sustains a general bad character, is

proper evidence in mitigation, because there can be less injury inflicted on the man who has a general bad character, than on one whose general character is good. But it is a general rule, that the character of either a witness or party cannot be impeached by special acts, for no man is supposed at all times to be prepared with the proof to meet every individual act, but is presumed at all times to be prepared to support his general character. Witnesses under the rule can only testify to the general reputation amongst the party's associates, and not of particular acts, and what particular individuals may have charged. The republication of a libellous article from another paper is substantially the same thing as repeating what an individual may have said of the defendant. It seems, therefore, to follow, that it could not be admitted to show his general bad character. Evidence that the plaintiff was suspected by his neighbors of the act charged, is not admissible in mitigation of damages, under the general issue. *Young* v. *Burnett*, 4 Scam. R. 43. And if it were offered as tending to establish the truth of the charge, it was under the rule, equally inadmissible. If admitted, its effect would tend to produce that impression on the minds of the jury, and would be to permit the defendant to do that indirectly which he has no right to do directly.

It was urged that the court erred in not permitting the witness to testify in detail, what people generally said in regard to plaintiff being guilty of theft. The witness had already testified, that prior to the publication of this article, there were reports in circulation that plaintiff below was generally suspected of theft and robbery. And we are at a loss to perceive upon what grounds the defendants had a right to have these reports detailed to the jury. It would lead to endless investigation and collateral issues as to what these reports were, who circulated them, and would tend to consume time, increase expense and produce confusion, by burthening the case with immaterial circumstances, where no beneficial result would be attained. Where it was proven to the jury that the plaintiff was generally suspected of being a thief, the evidence was as complete as it could be by giving the particulars of what each person said who circulated the rumor. What they said would not tend to give it additional weight. And both in reason and from practice it was not properly admissible.

It was urged that the court erred by instructing the jury that when defendants plead the general issue they admitted the plaintiff was innocent of the charge. While this is not the language of the plea, it is undoubtedly the effect of such a plea. *Reginer* v. *Cabot*, 2 Gilm. R. 39. That plea denies the act charged in the declaration only, and the truth or falsehood of

22

the charge cannot be inquired into under that issue. Its false-hood stands admitted by the parties; and the instruction as given could not have misled the jury, and was not erroneous.

Upon the whole record no error is perceived for which the judgment should be reversed; and it must therefore be affirmed.

*Judgment affirmed.*