L. Montgomery v. W. M. Knox—Syllabus.

## L. MONTGOMERY, APPELLANT, VS. W. M. KNOX, APPELLEE.

1. In libel any language published of a person that tends to degrade him, or to bring him into ill repute, or to destroy the confidence of his neighbors in his integrity, or to cause other like injury, is actionable *per se*.

2. M. published of K. this : "We have recently been defending a suit brought against this association by a citizen of Micanopy, who lost his stock of goods by fire during last October. There were circumstances which satisfied the board of directors that the fire was not accidental, consequently we did not feel that we had the right to assess the members of this association to pay what we had reason to believe a fraudulent loss:" *Held*, That a declaration in libel with a count on this language containing proper colloquium and innuendo as to its being of and concerning K. and as to his connection with the subject matter, is sufficient.

3. It is no objection to a declaration in libel that the libelous matter does not charge a crime ; nor, where such matter is actionable *per se*, that special damage is not alleged.

4. Under our statute it is error to permit a party to prove that his witness has made statements before inconsistent with his present statements, unless during his examination the circumstances and the occasion of his former statements have been brought to his attention.

5. In libel, under a plea of not guilty, it is admissible for defendant to prove, in mitigation of damages, that there was a general suspicion and belief of the truth of the published charge; and under

a plea of privileged publication, such evidence is admissible as pertinent to the question of express malice.

6. A charge of the court to the jury, correct as far as it goes, but wanting in fullness, will not be held objectionable in this court, where it appears that the defect was afterwards cured by instructions given by the court at the request of counsel.

7. It is not error in a libel case to charge the jury that if they are satisfied the publication was made from "ill will," meaning express malice, they may find exemplary or punitive damages to such amount as the facts and circumstances in evidence may justify.

8. It was error in this case to instruct the jury that if they found the libel false and without probable cause, that was evidence of express malice to warrant a verdict for plaintiff awarding exemplary damages. Want of probable cause has nothing to do with libel cases. If the belief which prompted the publication was an unreasonable one, that and falsity did not necessarily imply express malice ; but were facts to be left to the jury along with others. It was their province to decide upon the sufficiency of the evidence to show express malice.

9. A publication in regard on business made by one having interest therein, and only to others also having an interest, is privileged ; and the privilege furnishes a good defence in a suit for libel, unless it can be shown that the publication was made from express malice, in which case the privilege does not avail. But publication to others than those interested would not be privileged

Appeal from the Circuit Court for Alachua county.

The facts of the case are stated in the opinion.

*Taylor & Sanchez* for Appellant.

*Ashby, Scott & Thrasher* for Appellee.

MR. JUSTICE RANEY delivered the opinion of the court :

The appellant was sued in the court below by appellee, Knox, for libel. The declaration contains three counts, but they are the same as to the matter of libel, each alleg-

ing for such matter that appellant published of and concerning the appellee these words: " We have recently been defending a suit brought against this association by a citizen of Micanopy, who lost his stock of goods by fire during last October. There were circumstances which satisfied the board of directors that the fire was not accidental, consequently we did not feel that we had the right to assess the members of this association to pay what we had reason to believe a fraudulent loss." The difference between the counts is, that the first connects appellee with this language by stating that appellant made the publication to cause it to be suspected and believed that appellee had been guilty of burning his own property, or causing to be burned, with the view of collecting the insurance thereon; while the second connects appellee with it by more specifically stating that he had lost goods by fire in Micanopy during the month mentioned, and that at the time of the publication he had sued the insurance company, of which appellant was president, to recover for the loss, and also stating that the publication was made in "*The Orange Growers' Gazette*, a newspaper published in Micanopy;" and the third alleges the publication of the language, but does not otherwise connect appellee with it than to say it had reference to him.

Appellant demurred to the declaration on grounds that will be stated hereafter. The court overruled the demurrer. He then filed two pleas : 1st, That the matter complained of as libelous " is a detached portion of an official communication made by the defendant in the official capacity which he occupies as president of the corporation * * known as the Florida Mutual Fire Insurance Association, to the members only of said corporation, x relating entirely and exclusively to the condition and business generally of said corporation ;" and that said communication " contained no facts or charges except such as pertained to the busi-

ness " of the corporation, and which its members " had a
right to be informed about," and were " interested " in ;
" and which official communication it was the legal duty
of this defendant, as the president of said corporation, to
make to the members" thereof. That said "communication
was not published with any malice or with any intention
to injure * * the plaintiff;" and that it was not published
in the newspaper in which the declaration alleges it to have
been published " with the sanction or consent of the de-
fendant, or by his procurement, or by his authority or
through his agency, but was a privileged communication
made by this defendant, as president of said corporation,
only to the members thereof."

The 2d was the plea of not guilty. The appellee took
issue on the first plea, and the case went to trial, resulting
in a verdict of $7,000 for appellee.

Thereupon appellant made a motion for a new trial
which was denied, and to this he excepted, and subse-
quently entered his appeal to this court from the judgment
rendered on the verdict.

Before turning to the bill of exceptions and the matters
therein set out on which errors are assigned, it is deemed
appropriate to dispose of the questions raised by the de-
murrer to the declaration, the overruling of which is the
first error assigned by appellant.

The three grounds on which the demurrer rests are : 1st,
That the charges and statements of the declaration, even if
true, do not make a case of actionable libel ; 2d, That a
punishable offence or crime is not charged nor any special
damage or injury shown ; and 3d, That the defamatory
matter alleged consists merely of the expression of opinion
or suspicion. Whether the declaration is defective on the
first ground depends upon the further question whether
the published matter is a libel actionable *per se*—that

is, actionable without having caused special damage. As to this, any language published of a person which tends to degrade him, or to bring him into ill repute, or to destroy the confidence of his neighbors in his integrity, or to cause other like injury to him is actionable, irrespective of special damage. Of the numerous authorities on the subject we cite only a few, there being none we know of to a contrary effect. Townshend on Slander and Libel, section 176; White vs. Nichols, 3 How. (U. S.), 266; Chaddock vs. Briggs, 13 Mass., 248; Colby vs. Reynolds, 6 Vermont, 489; Rice vs. Simmons, 2 Harrington, 417.

But the publication in this case was such as to require in the declaration founded on it that the person and the facts referred to should be given, in order to make explicit what was otherwise not apparent on the face of it. In other words, merely setting out the language without a colloquium as to the person and an innuendo as to the facts of burning would be insufficient. See Chitty on Pleading, 16th American edition, 418, 422. Testing the declaration by this rule, we deem it unnecessary to analyze the first and third counts, whose sufficiency may be questionable, especially the latter, because we find the second free from objections applicable to the others and not amenable to the attack of the demurrer. It is in the usual form as to the previous good character and standing of the appellee and the falsity and malice of the publication, while it also explains that the reference was to him, he having lost property by fire in Micanopy in the October mentioned, and having sued the insurance association of which appellant was president to recover his loss. Taking these allegations in connection with the language of the publication, a case is presented which, if true, tends to degrade and injure the reputation of appellee, and therein meets the requirements for his declaration.

The objections raised by the second and third grounds of demurrer are untenable. It is not necessary in a libel suit to allege that a crime was charged, as may be seen from the class of cases actionable *per se*, given in Townshend on Slander and Libel, section 176 ; nor is it necessary to allege special damage ; Chaddock vs. Briggs, 13 Mass., 248 ; nor is it a good objection in this case that the defamatory matter consists merely of the expression of opinion or suspicion, as that cannot be correctly said of the matter complained of. It is further suggested in behalf of appellant that the demurrer should have been sustained, because the publication was a privileged one, but there is nothing appearing in the declaration to raise that question. The second count being good, the court did not err in overruling the demurrer.

Proceeding to questions sprung during the trial, we come to the second, third and fourth errors assigned, to-wit : 2d, " the court erred in allowing witness, Martin, to be asked if the form used in publishing the *Orange Growers' Gazette* was the same as used in publishing the article in the *Mutual Observer*," 3d, " the court erred in allowing the plaintiff to impeach or contradict his witness, L. C. Martin ;" 4th, " the court erred in allowing plaintiff to contradict and impeach his witness without first laying foundation for the introduction of such testimony." The witness who was called by appellee had testified that he had published in the *Orange Growers' Gazette*, a paper of which he was editor, an article entitled " Present Condition of the Florida Mutual Fire Insurance Association," which was signed L. Montgomery, President, and contained, among other matter, the language complained of in the declaration. He had further testified that the article had been handed to him by some one of the officers of the association, but didn't know which, and that he published it in

the *Mutual Observer* for the association prior to its publication in the *Orange Growers' Gazette*, and that the publication in the latter was without appellant's consent or knowledge, and that he had no control of, or interest in, the paper. Then came the question objected to in the second assignment. Considering that one of the issues was whether appellant had caused the publication to be made in the *Orange Growers' Gazette*, and that the article had been handed to witness by an officer of the association for publication in the *Mutual Observer*, the question would seem to be pertinent, though if the answer had been in the affirmative it would have proved nothing, unless sustained by other evidence of appellant's complicity in that publication.

As to the 3d and 4th, the witness had further testified that he did not recollect whether the form used in publishing the article in the *Orange Growers' Gazette* was the same used in publishing it in the *Mutual Observer*, or not—that part might have been retained, or the whole, or the whole might have been taken down. That he published the *Mutual Observer* for the association, and looked to it for pay, and was paid by its officers. The witness having been discharged, appellee next called Andrew Shuford, to whom this question was put: " State whether or not, at the office of the *Orange Growers' Gazette*, the witness, * Martin, had a conversation with you and J. D. Knox in relation to this publication, and if so, state what that conversation was." Appellant objected, on the ground that appellee could not contradict or impeach his own witness ; but the court allowed the question, and witness answered, " he said he published the article for Dr. Montgomery, and the Doctor paid him for it." Appellee then called J. D. Knox, and put a similar question to him, to-wit: " State whether or not, at the office of the *Orange Growers' Gazette*, and

subsequent to the burning of Wm. M. Knox's store, in Micanopy, you heard * Martin, in the presence of Andrew Shuford, make any statement as to the publication of the article in his paper, if so, state what his statement was." There was the same objection and ruling of the court as to this. Witness answered: "I asked him if he published the piece; he said 'no, Dr. Montgomery paid me, and I publish for anybody that pays me.'"

The patent object of these questions was to elicit evidence that the witness, Martin, had made statements before the trial different from those given in his testimony. The familiar rule on this subject is that evidence of this kind is not admissible, even to contradict a witness of the opposite party, unless the attention of the witness, while giving his statement, has been called to the time, place and circumstances of the contradictory statement, so as to afford him opportunity to refresh his memory and make his answer advisedly. Here the witnesses were called to prove contrary statements of another witness of the same party, and certainly the rule should not be less rigid in that case. On the contrary, in view of the general doctrine that a party putting up a witness thereby holds him out as worthy of credit, it seems to be reasonable that the rule should be even more rigid. But, not to insist on this, in either case the rule should be observed. That was not done in reference to the witness, Martin. His attention was not called in any wise to the circumstance of having made statements to Shuford or Knox different from the testimony he had given before the court.

Our statute permits a party to contradict his witness by other testimony, in case he proves adverse, or to prove that he has made statements to others before inconsistent with his present statements; but in the latter case the circumstances and the occasion of the former statements must

have been brought to his attention. McClellan, 518, section 26. This is little more than declaratory of the rule as it existed before. 1 Greenleaf on Evidence, section 444 and notes. Under a similar statute in Massachusetts, which, however, has not the qualification " in case (the witness) proves adverse," the rule as to the circumstances and the occasion, it is held in Ryerson vs. Abington, 102 Mass., 526, must be followed, and we think it should be under ours.

The appellee, not having laid proper foundation for the questions to Shuford and Knox, they were improperly allowed.

The fifth error assigned is: " In refusing to allow defendant to show that, prior to the publication of the article complained of, there was a general suspicion, and it was generally believed in Micanopy that appellee was implicated in the burning of his store." It seems that the court refused such evidence on the idea that it was directed towards justification and not to mitigation of damages. But this did not matter. If the evidence was admissible for any purpose it should not have been rejected because it did not apply to another. As the judge conceded it was admissible under the plea of not guilty in mitigation of damages. There is conflict of authority in regard to its admissibility under that plea, but we think the better opinion is in its favor, and this court has settled the question by so holding in Jones, Varnum & Co. vs. Townsend's Administratrix, 21 Fla., 321. See Commons vs. Walters, 1 Porter, 323 ; Fuller vs. Dean, 31 Ala., 654 ; Shehan vs. Collins, 20 Ill., 325 ; Derveer vs. Sutphin, 5 Ohio St., 293 ; Case vs. Marks, 20 Conn., 248 ; Wetherbee vs. Marsh, 20 N. H., 561 ; Bridgman vs. Hopkins, 34 Vermont, 532 ; Hubbard vs. Rutledge, 57 Miss., 7. A material question to be decided was as to malice, and whatever tended to

disprove that, or to show that the publication was made under information or circumstances that gave apparently just and lawful occasion for it, should have been allowed to go to the jury on the question of damages. We think also that the evidence was admissible under the plea of privileged publication as a circumstance to be considered by the jury, in connection with other facts intended to show, not justification, but that the publication was not made from express malice.

The next error assigned (6th) is against the charge of the court, against instructions given at the request of appellee, and against the refusal of the court to give the 5th instruction asked for by appellant. The charge is " that the printing of any expression which brings a man into contempt or ridicule, or degrades him in the estimation of society, is a libel, and if the jury is satisfied from the evidence that the defendant published, by printing the expressions charged in the declaration as libelous, and that such expressions tended to degrade the plaintiff or bring him into contempt, then the defendant is guilty of a libel, unless the publication was made under such circumstances as justified the defendant in making it."

That in a suit for libel, if no special damage is proved, as, for instance, a loss in a man's business, still the plaintiff may recover what is known as exemplary or punitive damages, when the jury are satisfied that the publication was made from malice or ill will to the plaintiff, and the jury may find such amount of damage as the facts and circumstances in the evidence may justify.

The first paragraph of the charge is objected to because not full enough in its explanation of the law involved in the case. There is nothing wrong in the charge, so far as it goes, but perhaps it is defective in not explaining the nature and grounds of the justification set up in the defence

and the evidence necessary to prove or disprove it. That, however, was remedied later on in the trial by the instructions given for appellee, which, in the main, cover the points of his objection to the charge. Three of those instructions were as follows:

1st. " In order for the plaintiff to recover in this suit, it must be proven and shown that the defendant published, or had published, the libelous matter complained of in the manner and in the newspaper, as charged and alleged in the declaration, and that it was so published by the defendant's procurement, or by and with his authority, sanction and consent, and that he did so publish the same, or have it published with the intention of injuring the plaintiff."

4th. " If you believe from the evidence that when the defendant, Montgomery, had the article printed or published in the monthly periodical called the *Mutual Observer*, he did so in his official capacity of President of the Mutual Fire Insurance Association for the *bona fide* purpose of conveying information to the members of that association, and to them only, and that those members had the right to have such information from him as such officer of said company, and that he gave it in good faith without malice, then it was a privileged communication and is not actionable."

7th. " If you believe from the evidence that L. Montgomery had probable cause to believe and did in good faith believe that there were suspicious facts and circumstances tending to show that the plaintiff's alleged loss by fire was not a *bona fide* loss, and in good faith, as President of the Insurance Association, by reason of such suspicious facts and circumstances, defended a suit brought by plaintiff to recover his alleged loss by fire; and that in the discharge of his official duties as such officer of said insurance association he communicated to the members of such association the fact that such suit *was being defended,* and gave them in *good*

*faith* the grounds upon which it was being defended ; and that the members of the association had a right to have such information given to them, and that he had no malice toward the plaintiff in making such publication; then you cannot find the defendant guilty of libel, unless the defendant made the publication willfully and with the malicious intention of injuring the plaintiff. Under such circumstances it is incumbent npon the plaintiff to prove malice, and he must prove it to your satisfaction beyond a reasonable doubt."

The other portion of the charge is not objectionable, except that there was no occasion under the pleadings or evidence for any charge as to special damages. Under the plea of not guilty, where the publication is actionable *per se*, malice is implied, which is sometimes termed legal malice, and this malice does not necessarily authorize the finding of exemplary or punitive damages. If there is nothing in the character of the publication itself to show express malice, that is, ill will, hostility, evil intention to defame and injure, the occasion for exemplary or punitive damages does not arise, unless there is some proof to establish such express malice—in other words, proof of malice in fact. But the charge was not intended to authorize exemplary damages for mere legal malice. It adds " ill will," and proof that the publication was made from the state of feeling this word implies would be evidence of the express malice that might justify exemplary damages. Viewing the charge as to malice in this light, it is correct, but would have been better if accompanied with explanation on the subject of express malice.

As to the five instructions asked by appellee, and given by the court, which is assigned for error, four of them are based on law not essentially different from that on which the three instructions given for appellant, as shown above, were

based, but looking to a reverse belief from the evidence on the part of the jury. The other is this: "If they believe from the evidence in this case that the libel complained of in the plaintiff's declaration was false and without probable cause, then such falsehood and want of probable cause are evidence of express malice toward the plaintiff, and the jury will be warranted in bringing in a verdict tor plaintiff and in awarding to him exemplary and punitive damages."

We think this should not have been given. There was no question in regard to the falsity of the publication. Whatever may have been the fact, that was conceded as a result of the issues made by the pleadings. Such evidence as was admitted looking to the contrary was only for the purpose of testing appellant's grounds of belief on which the publication was based. If that evidence showed the belief to be a reasonable one, such as would have entered the mind of an impartial person weighing it carefully, he was justified in his belief, and the mistake in the belief would not be visited upon him as implying express malice. On the other hand, the unreasonableness of the belief attending admission of falsity, while evidence of malice, would not necessarily show express malice. They were circumstances to be left to the jury along with such other circumstances and facts as might tend to prove or disprove express malice, and should not have been treated as in themselves evidence which concluded the jury. Whether sufficient or not, it was their province to decide.

The want of probable cause relates to a doctrine that has no application in cases of libel or slander. It has its place only in actions for malicious prosecution. In a case of libel the proof of express malice, under the plea of not guilty, does not involve facts such as enter into the question of a want of probable cause, but facts in regard to a hostile state of

mind and feeling, while under the plea of privileged publication, proof of express malice is intended primarily to avoid the effect of privilege.

This instruction is wrong in another view. It assumed that the publication was not privileged, when that fact, as will appear hereafter, depended on the responsibility of appellant for its publication in the *Orange Growers' Gazette.*

The remaining question under the 6th error is, whether the court erred in refusing this instruction for appellant: "Before the plaintiff can recover in this suit it is incumbent upon him to show and prove that he has been damaged or injured in his character or reputation. The *amount* of the damage is with you altogether, but the plaintiff has alleged in his declaration that he has been damaged and injured in his credit and reputation from this publication. He must prove that his credit and character have been injured and affected by reason of this publication."

There was no error in refusing this, for the sufficient reason that the publication was actionable *per se*, and it was not necessary to allege special damage, or to prove any when not alleged.

Whether the court erred in denying the motion for a new trial, which is the 7th error assigned, is already determined in the affirmative, in deciding some of the questions presented by the motion ; and, as there is to be a new trial, it is deemed unadvisable on our part to anticipate the finding of the next jury on the evidence in the case, and we, therefore, decline to discuss the question as to the sufficiency of the evidence to support the verdict. In regard to the law, other than such as we have already announced, by which the admission and effect of evidence should have been controlled under the issues to be tried, we hold that the first plea, a summary of which is given in our statement of the case, would make a good defense, if sustained by proof. It

denies the publication in the *Orange Growers' Gazette*, and claims that the publication in the *Mutual Observer* was privileged, setting out facts which, if true, justifies the claim. As to what constitutes privileged publication, see 2 Kent, 22–3 and notes, 13th edition ; Townshend on Slander and Libel, section 209; Sunderlin vs. Bradstreet, 46 N. Y., 183; S. C., 7 American Reports, 322 ; 1 American Leading Cases, 192.

We think this plea comes within the rule of these authorities as to the publication in the *Mutual Observer*, that being made in the interest of appellant's business, and sent only to others also having an interest in that business. That it was printed made no difference. P. W. & B. R. R. Co. vs. Quigley, 21 How., U. S., 202; Lawless vs. The Ang.-Egypt C. & O. Co., 4 Law Rep., (Eng.) 262.

But the rule does not extend to the publication in the *Orange Growers' Gazette*, and appellant would be chargeable with an unjustified libel it his denial as to that publication can be shown to be untrue. Granting, however, that he is only responsible for what appeared in the *Mutual Observer*, for which he has the protection of privilege, he loses that protection if it can be shown by appellee that he was actuated by express malice in the publication.

As to the other plea, not guilty, the law will be seen fully expounded in Jones vs. Townsend, 21 Fla., 431, both as to the questions raised by the issue and the proper rule in regard to damages.

It is unnecessary to pass upon the matters of the 8th error assigned, as they were but incidents of the trial not likely to arise in the case again.

The 9th error is that " the court should have decided whether the article complained of was privileged or not, and erred in submitting the question to the jury without

first * deciding as to whether or not it was privileged." We do not find in the record that the court submitted to the jury the determination of the character of the publication in respect to the question of privilege. On that subject the instructions given at the request of counsel apprised the jury what did or did not constitute a privileged publication in the light of the evidence before them. That was as much as was required of the court, though it might have been well to inform the jury that the publication under the facts connected with it, as set forth in the first plea, was privileged, and a good defence, if proved, unless it appeared from the evidence that it was made under the instigation of express malice.

For the errors we have shown, the judgment is reversed, and the case will be remanded for a new trial.