557 So.2d 91 (1990)
Frederick L. BOEHM, Appellant,
v.
AMERICAN BANKERS INSURANCE GROUP, INC., a Florida Corp., and Gerald Gaston, Appellees.
No. 88-2081.
District Court of Appeal of Florida, Third District.
February 6, 1990.
Frates, Bienstock & Sheehe, James C. Cunningham, Jr. and Terry Bienstock, Miami, for appellant.
Tew, Jorden, Schulte & Beasley, Frank Burt and Michael D. Joblove, Miami, for appellees.
*92 Before BARKDULL, JORGENSON and GERSTEN, JJ.
BARKDULL, Judge.
This is an appeal from a summary final judgment for defendants.
Appellant Boehm instituted an action in 1987 against American Bankers Insurance Group, Inc., hereafter referred to as ABIG, and Gerald Gaston, hereafter referred to as Gaston, alleging tortious interference and defamation. Briefly, the circumstances involved an executive search by an Oklahoma business group which sent a search agent, Mr. Smith, down to Miami to acquire information about Boehm. Boehm had been employed with ABIG between 1972-1980. Smith met with Gaston, President of ABIG, in order to learn more about Boehm. Boehm asserts that at this meeting Gaston called him a homosexual and also accused him of causing ABIG an $8,000,000.00 loss. Appellees' defense was that the statements were protected by a qualified privilege which an employer has when providing information about a former employee. The trial court granted a summary judgment which reads in part as follows:
"Facts As To Which There Is No Genuine Issue
1. This is a defamation and tortious interference action filed by Plaintiff Frederick L. Boehm against his former employer American Bankers Insurance Group (`ABIG') and its President Gerald Gaston (`Gaston'). ABIG and Gaston shall be referred to collectively as `Defendants.'
2. This action arises out of alleged statements made by Defendant Gaston during an interview initiated by an executive search agent, Tracey Smith, regarding a purported job offer to Plaintiff. At all material times, the executive search agent held himself out as the agent of investors who contemplated hiring Plaintiff as a Chief Executive Officer of an insurance company.
3. Smith initiated the contact with American Bankers by speaking with the personnel department. He told the personnel department that he was `doing an executive search,' that he did not want to bother the `Chairman' of the Board `Mr. Landon,' and asked who would be the `next in charge.' Smith was referred `to Mr. Gaston' who `was number two.'
4. Smith scheduled an interview with Defendant Gaston but did not indicate that the subject of the interview was Frederick L. Boehm until he was in the interview on April 21, 1987.
5. After some social introduction, Smith opened the interview by identifying himself to Gaston as an executive search agent and explaining that Plaintiff was a candidate for the Chief Executive position of an insurance company.
6. Upon Smith identifying the subject of his search, Gaston told Smith `you're going to hear good things, a lot of good things about Fred.' Gaston further stated that Plaintiff `really does well, he is extremely bright', and `everybody liked him.'
7. Despite Defendant Gaston's initial positive comments, Smith continued to solicit further personal information concerning Plaintiff. He informed Gaston that the prospective employers were a `very moral group', `extremely religious', and that they wished to employ a `person beyond reproach', for a `high profile position'.
8. After Smith had emphasized the `religious' or `moral' character of the prospective employers at least `three' and possibly `four or five times', Defendant is then alleged to have stated that either `Fred is a homosexual' or `there is a rumor that Fred might be a homosexual.' It is also alleged that Defendant Gaston stated that Plaintiff `cost the company $8,000,000.'
9. Based upon Defendant Gaston's behavior and words, the executive search agent testified that he did not believe that Gaston had any malicious intent in uttering these alleged statements.
Conclusions of Law
1. It is well settled that once a movant for Summary Judgment tenders competent *93 evidence to support his Motion, the opposing party must come forward with counter-evidence sufficient to reveal a genuine issue of fact. Eagle National Bank of Miami v. Burks, 502 So.2d 69 (Fla. 3d DCA 1987). As the Supreme Court explained in Harvey Building, Inc. v. Haley, 175 So.2d 780, 782-83 (Fla. 1965):
`To defeat a motion which is supported by evidence which reveals no genuine issue, it is not sufficient for the opposing party merely to assert that an issue does exist. If the moving party presents evidence to support the nonexistence of a material issue, he will be entitled to a summary judgment unless the opposing party comes forward with some evidence which will change the results .. .'
Defendants' Communications Were Privileged
2. Florida law recognizes that an employer has a qualified privilege in communicating information about a former employee to a prospective employer. Nodar v. Galbreath, 462 So.2d 803 (Fla. 1984); Kellums v. Freight Sales Centers, Inc., 467 So.2d 816 (Fla. 5th DCA 1985) (`Florida recognizes that an employer may claim a qualified privilege in communicating information about a former employee to a prospective employer ...'.) Id. at 817; McCurdy v. Collis, 508 So.2d 380 (Fla. 1st DCA 1987).
3. This privilege extends not only to communications regarding an employee's job performance but also to `any information which is relevant to the inquiry being made.' (Kellums, 467 So.2d at 817), Riggs v. Cain, 406 So.2d 1202 (Fla. 4th DCA 1981) (an employer `is pretty much free to communicate his honest opinions about the employee's job performance, and any information so long as it is relevant to the inquiry being made'). In order for the communication to be considered privileged, it need only be `published upon an occasion that makes it conditionally privileged.' Nodar at 809.
4. Here, there is no genuine issue or dispute that the alleged defamations occurred during an interview between a former employer and an alleged representative of a prospective employer. When, as in the instant case, `the circumstances surrounding a defamatory communication are undisputed, or are so clear under the evidence as to be unquestionable, then the question of whether the occasion upon which they were spoken was privileged is a question of law to be decided by the Court.' Nodar, 462 So.2d at 810. Since the circumstances surrounding the communications here are undisputedly privileged, the Court finds the occasion upon which the alleged defamations were uttered was a privileged occasion.
5. The executive search agent emphasized the moral and religious character of the prospective employer and doggedly pursued questions regarding the Plaintiff's personal as well as professional character. Since Defendant Gaston was responding to the questions on a privileged occasion, the privilege extends to all `matters [even if they] would otherwise be actionable.' Nodar, 462 So.2d at 809.
Plaintiff Fails To Show Express Malice To Overcome The Privilege
6. It is well-settled that, `where a qualified privilege exists, plaintiffs must prove express malice or malice in fact in order to recover.' Schreidell v. Shoter, 500 So.2d 228, 232 (Fla. 3d DCA 1987).
7. The Supreme Court has clearly explained:
The determination that a defendant's statements are qualifiedly privileged eliminates the presumption of malice attaching to defamatory statements by law. The privilege instead raises a presumption of good faith and places upon the plaintiff the burden of proving express malice  that is, malice in fact as defined by the common law doctrine of qualified privilege.

Nodar, at 810. Thus, the Plaintiff must `affirmatively and expressly to show malice in the publisher.' Coogler v. Rhodes, 38 Fla. 240, 21 So. 109, 112 (1897).

*94 8. The Supreme Court defines express malice as `ill will, hostility, evil intention to defame and injure.' Nodar 462 So.2d at 811 citing Montgomery v. Knox, 23 Fla. 595, 3 So. 211 (1887). The Supreme Court has unequivocally established that all of the three elements (ill will, hostility and evil intention to defame and injure) and more must be shown. Nodar at 811 fn 8. It is insufficient that the speaker have generalized feelings of hostility and malice towards the Plaintiff. Only if the Plaintiff demonstrates the primary motivation for the statements uttered was express malice, is the privilege overcome. Nodar at 812.
9. Similarly, with regard to tortious interference:
a qualified privilege to interfere is not negated by concomitant evidence of malice. It is only when malice is the sole basis for interference that it will be actionable.

McCurdy v. Collis, 508 So.2d 380, 383 (Fla. 1st DCA 1987).
10. Here there can be no question that the speaker's `primary motivation' falls within the scope of the privilege. Defendant Gaston did not seek out Tracey Smith and gratuitously opine as to Plaintiff's performance or life-style. Instead, Smith actively sought out Gaston and insistently pressed for information regarding Plaintiff's personal character and life-style. The alleged statements do not intrinsically reflect malice in the speaker. Nor was there a genuine issue that probative competent evidence exists of extrinsic circumstances which would demonstrate malice. Thus, there is no genuine issue of fact that Defendant Gaston's `primary motivation' in uttering the statements at issue was not express malice. Since the alleged statements were clearly made on a privileged occasion, and since there is no genuine issue of fact that Defendant Gaston did not utter the statements with `ill will, hostility, evil intention to defame and injure' or that he used the privileged occasion to `gratify his malevolence', Defendants are entitled to judgment on both the defamation and tortious interference claims as a matter of law."
The appellant contends that the trial court erred by deciding as a matter of law that Gaston's statements were protected by qualified privilege; that it erred by determining as a matter of law that Boehm had not overcome the claimed qualified privilege by showing that Gaston acted with express malice; and that the existence or nonexistence of a qualified privilege and whether that privilege was lost, are jury questions.
In Florida, a former employer is free to express his honest opinions regarding a former employee to a prospective employer. Nodar v. Galbreath, 462 So.2d 803 (Fla. 1984); Kellums v. Freight Sales Centers, Inc., 467 So.2d 816 (Fla. 5th DCA 1985). In the instant case the executive search agent "actively sought out Gaston and insistently pressed for information regarding his personal character and behavior." The trial court was correct in finding the alleged defamations occurred on a privileged occasion and were relevant to the inquiry being made.
The trial court committed no error in finding that the privilege was not abused. There was no question that the speaker's primary motivation was to respond to the search agent's inquiries. As the trial court noted: "Gaston did not seek out Tracey Smith and gratuitously opine as to [Boehm's] performance or life-style. Instead, Smith actively sought out Gaston and insistently pressed for information regarding [Boehm's] personal character and behavior."
It is also clear that as a matter of law "the alleged statements do not intrinsically reflect malice in the speaker." The modern view considering the issue, has not found statements regarding sexual preference to constitute slander per se, let alone intrinsic evidence of express malice[1] and no extrinsic *95 evidence of express malice is shown in the record. None of the evidence reflected that Gaston had a wanton ill will, hostility, and evil intention to defame and injure Boehm. Boehm's former co-workers and Gaston all testified Gaston harbored no ill will toward Boehm, and even Boehm himself testified that Gaston never expressed a dislike for him.
Both during and after Boehm's tenure at American Bankers, there were "pervasive rumors" that Boehm was a homosexual. Three former co-workers, one of whom was Boehm's secretary for four years, expressly testified that they knew or surmised that Boehm was a homosexual. The evidence developed during discovery established that Boehm regularly subscribed to homosexual publications, often was in the company of young men, "repeatedly" stayed at gay guest houses, frequented gay bars in Miami and Key West, both during his employment with American Bankers and subsequently, he also authored a book with a homosexual theme. Boehm's neighbors also testified that he was well known in the community as a homosexual. The plaintiff contends that there is other evidence that he is not a homosexual and this creates an issue of fact as to whether he is in fact homosexual. The very fact that the plaintiff realizes a conflict in the evidence as to his life-style recognizes that Gaston did have some evidence, or facts, that could lead him to the conclusion that the plaintiff was a homosexual.
As to the $8,000,000,00 loss, there is no dispute that such a sum was in fact lost by the company because of an adverse jury verdict in a case in which Boehm testified. Whether his testimony contributed to the adverse verdict may be in dispute, but this does not make Gaston's statement "that Boehm caused the loss", actionable. It merely demonstrates a basis for such a conclusion, even if, in fact, such a conclusion may be untrue. The undisputed fact was that the company suffered an adverse jury verdict in a cause in which Boehm was a witness.
As to both the $8,000,000.00 loss and the reference to Boehm's life-style, the test is not whether such statements are based on undisputed fact, or evidence, but whether as a matter of law the spokesman's conclusions were justified under the circumstances, even if these conclusions turn out to be false. See Kellums v. Freight Sales Centers, Inc., supra
"[T]here are occasions on which it may be entirely proper to give information of a rumor or a mere suspicion, as such, without any belief or any reason to believe that it represents the truth. Probably the best statement of the rule is that the defendant is required to act as a reasonable man under the circumstances, with due regard to the strength of his belief, the grounds that he has to support it, and the importance of conveying the information."
Here, as the circuit court found, the "executive search agent emphasized the moral and religious character of the prospective employer and doggedly pursued questions regarding [Boehm's] personal, as well as professional character." Thus, the information conveyed was extremely important to the agent and his principals.
Even though the speaker's primary motivation must be express malice to overcome the privilege in a defamation action in a tortious interference claim, malice must be the sole basis for the interference. Ethyl Corporation v. Balter, 386 So.2d 1220 (Fla. 3d DCA 1980), cert. denied, 452 U.S. 955, 101 S.Ct. 3099, 69 L.Ed.2d 965 (1981). No reasonable jury could have found that Gaston's sole motivation in responding in private to the executive search agent's inquiry was express malice.
*96 Measuring the summary judgment against the principles announced in Nodar v. Galbreath, 462 So.2d 803 (Fla. 1984), we find no error. In Nodar supra, a high school English teacher instituted a defamation action against a student's father for comments he made about her performance as a teacher, at a public meeting of the school board employer. In quashing an opinion of the Fourth District Court of Appeal, with directions to reverse a plaintiff's verdict for compensatory and punitive damages and directing that a verdict be entered for the defendant, the court said, among other things the following:
"We find that there are several legal grounds for holding that the defendant's remarks were made upon a conditionally privileged occasion.
`One who publishes defamatory matter concerning another is not liable for the publication if (a) the matter is published upon an occasion that makes it conditionally privileged and (b) the privilege is not abused.' Restatement (Second) of Torts § 593 (1976). The law of Florida embraces a broad range of the privileged occasions that have come to be recognized under the common law. See Rahder & Snyder, Rediscovering Florida's Common Law Defenses to Libel and Slander, 11 Stetson L.Rev. 1 (1981). `A communication made in good faith on any subject matter by one having an interest therein, or in reference to which he has a duty, even though it contains matter which would otherwise be actionable, and though the duty is not a legal one but only a moral or social obligation.' 19 Fla.Jur.2d Defamation and Privacy § 58 (1980). See Abraham v. Baldwin, 52 Fla. 151, 42 So. 591 (1906).
This general rule of privilege finds expression in several established common-law legal grounds for holding that the defendant's statements to the school board were protected by a qualified privilege. The remarks of the defendant, addressed in person to a school board at a school board meeting concerning the curriculum and instruction in an English class at a public high school in which his son was enrolled and his son's difficulties with the class clearly came within the scope of the privilege based on mutuality of interest of speaker and listener. See Johnson v. Langley, 247 Ky. 387, 57 S.W.2d 21 (1933). The concern of a parent for the welfare of his child provides a privilege for the occasion of speaking to one having the power or duty to take action for the benefit of the child. Restatement (Second) of Torts, § 597 (1976).
Another ground for holding that the statement was conditionally privileged would be that the statement was made for the protection of the recipient's interest in receiving information on the performance of its employee. See Restatement (Second) of Torts § 595 (1976). In this connection the value of the defendant's defamatory information to the school board in overseeing the operation of the public schools must be weighed against the extent of the harm likely to be done to the plaintiff's reputation as a result of the communication. L. Eldredge, The Law of Defamation § 86 at 461 (1978). Under the American Law Institute's approach, the interest of the school board in the performance of a teacher, its employee, would give rise to a privilege in another to provide information concerning that performance even without a legal duty or a family relationship and even though the information is not requested but merely volunteered, if the publication is `within the generally accepted standards of decent conduct.' Restatement (Second) of Torts § 595 (1976). Under the common law of Florida, a communication to an employer regarding his employee's performance is conditionally privileged, and the mode, manner, or purpose of the communication would go to the question of abuse or forfeiture of the privilege. Analogous situations include communications for bona fide commercial purposes where the interest to be protected is the recipient's. See e.g., Leonard v. Wilson, 150 Fla. 503, 8 So.2d 12 (1942); Putnal v. Inman, 76 Fla. 553, 80 So. 316 (1918); Coogler v. Rhodes, 38 Fla. 240, 21 So. 109 (1897); *97 Montgomery v. Knox, 23 Fla. 595, 3 So. 211 (1887).
* * * * * *
All of these grounds of qualified privilege have existed in the law of Florida for many generations and have served to provide broad protection for freedom of speech and of the press long before the creation of the remedy fashioned in New York Times v. Sullivan, [376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964)].
Where the circumstances surrounding a defamatory communication are undisputed, or are so clear under the evidence as to be unquestionable, then the question of whether the occasion upon which they were spoken was privileged is a question of law to be decided by the court. Abraham v. Baldwin, 52 Fla. 151, 42 So. 591 (1906). Here the circumstances and content of the statement were clear and undisputed. Therefore the defendant's statements to the school board were qualifiedly privileged as a matter of law and the trial judge erred in submitting the question of privilege to the jury.
* * * * * *
The legal conclusion that the defendant's remarks were privileged brings us to the question of express malice. If the statements were made without express malice  that is, if they were made for a proper purpose in light of the interests sought to be protected by legal recognition of the privilege  then there can be no recovery. The determination that a defendant's statements are qualifiedly privileged eliminates the presumption of malice attaching to defamatory statements by law. The privilege instead raises a presumption of good faith and places upon the plaintiff the burden of proving express malice  that is, malice in fact as defined by the common-law doctrine of qualified privilege. In cases of qualifiedly privileged publications the presumption which attends cases not so privileged of malice from the publication of libelous language does not prevail; the burden of proof is changed, and, in order for the plaintiff to recover, he is called upon affirmatively and expressly to show malice in the publisher. This malice may be inferred from the language itself, or may be proven by extrinsic circumstances. While the malice may be inferred from the communication, it is not inferable from the mere fact that the statements are untrue. Coogler v. Rhodes, 38 Fla. at 249, 21 So. at 112.
* * * * * *
Strong, angry, or intemperate words do not alone show express malice; rather, there must be a showing that the speaker used his privileged position `to gratify his malevolence.' Myers v. Hodges, 53 Fla. 197, 213, 44 So. 357, 362 (1907). See also Sussman v. Damian, 355 So.2d 809 (Fla. 3d DCA 1977). If the occasion of the communication is privileged because of a proper interest to be protected, and the defamer is motivated by a desire to protect that interest, he does not forfeit the privilege merely because he also in fact feels hostility or ill will toward the plaintiff. Coleman v. Neward Morning Ledger Co., 29 N.J. 357, 149 A.2d 193 (1959); Restatement (Second) of Torts §§ 599, 603 (comment a) (1976). The incidental gratification of personal feelings of indignation is not sufficient to defeat the privilege where the primary motivation is within the scope of the privilege. See Boston Mutual Life Insurance Co. v. Varone, 303 F.2d 155 (1st Cir.1962); Fahr v. Hayes, 50 N.J.L. 275, 13 A. 261 (1888); Craig v. Wright, 182 Okla. 68, 76 P.2d 248 (1938)." (Footnotes omitted.)
* * * * * *
If the voluntary remarks at a public forum in Nodar, supra, could not be actionable for the school teacher employee, then certainly, the remarks of Gaston about his former employee in private conference in response to an inquiry from an agent of a prospective employer would not be actionable as a case for defamation or tortious interference.
Therefore, the summary judgment under review is affirmed.
Affirmed.
NOTES
[1] As the appellees in their brief point out with the following: "As explained in Moricoli v. Schwartz, 46 Ill. App.3d 481, 5 Ill.Dec. 74, 361 N.E.2d 74 (1977), in rejecting the claim that an `imputation of homosexuality' was a per se defamation, the court held `we feel that in view of the changing temper of the times such presumed damages to one's reputation, from the type of utterances complained of in the instant case [plaintiff was called a `fag'], is insufficient to mandate creation of [a fifth category of per se liability]'; see also Morrissette v. Beatte, 66 R.I. 73, 17 A.2d 464 (1941) (where `filthy term ... meaning coition by one man with another' was not slander per se); Boy Scouts of America v. Teal, 374 F. Supp. 1276 (E.D.Pa. 1974) (comments regarding scout master's sexuality were not slander per se and were qualifiedly privileged.")