825 So.2d 424 (2002)
Curtis BORINO, Appellant,
v.
PUBLIX SUPERMARKETS, INC., Appellee.
No. 4D01-3267.
District Court of Appeal of Florida, Fourth District.
June 19, 2002.
Scott A. Mager of Mager & Associates, Fort Lauderdale, and Stewart L. Karlin of the Law Offices of Stewart L. Karlin, Fort Lauderdale, for appellant.
Robert D. Hall, Jr., Edmund J. McKenna and Dawn Siler Nixon of Ford & Harrison, LLP, Tampa, for appellee.
KLEIN, J.
Appellant plaintiff was awarded $200.000 by the jury in this defamation case, but the trial court granted defendant's post-trial motions for directed verdict and new trial. We reverse for reinstatement of the verdict.
Plaintiff was employed at a Publix store for twenty years as a clerk, stocking merchandise and unloading trucks, which involved strenuous physical labor. In recent years he had also been working a second job for Delta Airlines, cleaning the cabins of planes, which was not physically strenuous.
In March of 1998 plaintiff injured his ankle in a non-work related accident, and a cast was placed on his ankle. As a result of this accident he took a disability leave from Publix, collecting pay under the company's disability program. As plaintiff explained, disability pay is accumulated, three days for each quarter worked, to a maximum of 120 days.
*425 Following his injury, plaintiff did not work at either Publix or Delta for two months, and collected disability pay from Publix. He returned to work at Publix on May 5, on restricted duty, meaning less hours, and also returned to work at Delta on light duty, meaning easier work.
On August 4, plaintiff gave Publix a note from his physician stating that because of an impingement in his ankle, plaintiff would not be able to work for the next two weeks and would then be reevaluated. Plaintiff did not give a copy of the note to Delta because he was able to perform his lighter duties there. After working for Delta on August 14 plaintiff submitted another medical note to Publix on the 18th stating he would be out of work for the rest of the week and having surgery.
On August 7 a co-worker at Publix informed management that plaintiff was working at Delta while receiving disability from Publix. After confirming that plaintiff was working at Delta, an assistant store manager sent an e-mail to the human resources department advising that plaintiff:
(1) was known to be working at Delta, (2) had announced his intention to go part-time at Publix on October 1, 1998, and to use as much disability pay as he could before then, (3) had presented a note from a new doctor for two weeks off, (4) was believed to be continuing to work at Delta, (5) had recruited another employee to Delta who was retiring, and (6) he was creating an unfair situation for the hard working store employees which was having a detrimental effect on morale.
On August 25 plaintiff was terminated on the ground that he had defrauded Publix by collecting disability pay from Publix while working at Delta. The assistant store manager involved in the termination told another employee that plaintiff was "terminated for dishonesty" and this became known to a number of people.
Plaintiff brought this suit against Publix for defamation, which Publix defended by maintaining that the statements were true or that Publix had a qualified privilege to make the statements. The jury returned a verdict for plaintiff in the amount of $200,000, but the trial court granted Publix's post-trial motions for directed verdict and in the alternative new trial, which plaintiff appeals.
In that part of the order granting the motion for directed verdict the trial court stated:
The statement that Plaintiff was terminated for dishonesty is a true statement. Publix has consistently maintained that Plaintiff was terminated for dishonesty. Publix investigated Plaintiff's employment at Delta and there was a reasonable basis for Publix to conclude that Plaintiff had been dishonest in his dealing with Publix. See Boehm v. American Bankers Ins. Group, Inc., 557 So.2d 91 (Fla. 3d DCA 1990)(statement that the plaintiff caused a $8,000,000 loss based on the fact that the plaintiff testified at trial where the company lost $8,000,000 was not actionable) review denied, 564 So.2d 1085 (Fla.1990). As such, there is no actionable defamation.
Viewing the evidence in a light most favorable to plaintiff, as we do on review of a directed verdict, Landry v. Sterling Apartments, Inc., 231 So.2d 225 (Fla. 4th DCA 1969), we conclude that the trial court erred in directing a verdict.
Whether the plaintiff was dishonest or defrauded Publix was an issue of fact. There was evidence from which the jury could have found that plaintiff did not receive disability payments from Publix on any days in which he worked at Delta. In addition his work at Publix was very strenuous, *426 including lifting 100 pound bags of pet food, while his work at Delta was light duty which he could perform with his injury. The jury could thus have found that he was disabled from working at Publix, but not at Delta, and that plaintiff had done nothing improper if he had collected disability pay while working for Delta.
The case cited by the trial court, Boehm, is distinguishable, because in that case the statement carried a qualified privilege in that it was made to a prospective employer of plaintiff. In the present case, the statements that plaintiff was fired for dishonesty were published to plaintiffs fellow employees and were not privileged.
The basis of the order granting the new trial involves a copy of the termination notice contained in plaintiff's personnel file at Publix, which stated:
Curtis was dishonest with Publix Supermarkets, Inc. Curtis filed a claim for disability claiming he was unable to perform his duties as a grocery clerk. Curtis did however continue to perform duties for his other employer Delta Airlines while he received benefits from Publix. Curtis defrauded Publix of disability pay benefits.
During deliberations the jury sent a message to the trial judge asking whether Publix could continue to keep this separation notice in plaintiff's file. The trial court's reaction to this question was to state that it showed that the jury had a "misperception of the entire case," because the "separation notice itself is not defamatory." This comment was made outside the presence of the jury, and the court answered the question by informing the jury that "this is not an issue for you to decide. Please rely on your best recollection of the evidence in answering the questions on the verdict form."
In granting a new trial the court focused on this question, speculating that the jury must have been confused as to whether this was a defamation or a wrongful termination case. We find nothing in the record to support that ground, as plaintiffs counsel did nothing to suggest that this was a termination case and there were no such instructions given to the jury. Nor do we agree that the jury's question was irrelevant, since it could hinder plaintiff's ability to become employed in the future which would affect damages.
The court did not give any other legally supportable reason for granting a new trial, but cited Brown v. Estate of Stuckey, 749 So.2d 490, 497 (Fla.1999), several times. In Brown our supreme court addressed the granting of a motion for a new trial on the ground that the verdict is contrary to the manifest weight of the evidence, holding that the trial court "must articulate the reasons for the new trial in the order."
One of the cases relied on by our supreme court in Brown was Wackenhut Corp. v. Canty, 359 So.2d 430, 435, 437 (Fla.1978), in which the court explained:
Although an order for new trial need not incant language to the effect that the verdict is against the manifest weight of the evidence or was influenced by considerations outside the record, the order must give reasons which will support one of these two conclusions so that it will be susceptible of appellate review. Orders granting motions for new trials should articulate reasons for so doing so that appellate courts may be able to fulfill their duty of review by determining whether judicial discretion has been abused. [citation omitted.]
* * *
The province of the jury ought not be invaded by a judge because he raises a judicial eyebrow at its verdict.
*427 We find, as our supreme court did in Wackenhut, that the order granting a new trial in this case was an abuse of discretion. Having also concluded that the directed verdict was error, we reverse for entry of a judgment based on the jury verdict.
POLEN, C.J., and TAYLOR, J., concur.